HUBER, Respondent, vs. THE LA CROSSE CITY RAILWAY COMPANY, Appellant.

*March 12 — March 27, 1896.*

*Electric street railway: Injury to employee of electric light company: Negligence: Proximate cause: Court and jury.*

1. An electric street railway company, having contracted with an electric light company for changes in the location of street lamps of the latter so that their use should not interfere with the operation of the railway, was bound to the exercise of reasonable care and caution in the management of its road, and of the electric current which was its motive power, to prevent accidents to employees of the light company while engaged in such work.

2. An employee of the light company, while engaged in such work, was injured as a consequence of coming in contact at the same

Huber vs. The La Crosse City R. Co.

time with a span wire of the railway and the iron post to which it was attached, and which had been erected in close proximity to the wooden pole of the light company upon which he was climbing. The span wire, though properly insulated from the trolley wire, had become charged from a portion of the latter which had been temporarily coiled over it pending the continuation of the line, but a circuit break near the iron post prevented the current from passing to such post. It was not necessary that a person climbing the wooden pole should touch the span wire beyond the circuit break, and even should he do so he would be safe unless, at the same time, he touched the iron post with his naked hand or person so as to complete the circuit. The employee injured was an experienced workman, familiar with such wires and their insulation. *Held*, as matter of law, that these facts did not show that negligence of the street railway company was the proximate cause of the injury.

3. Negligence is not the proximate cause of an accident unless, under the circumstances, the accident was a probable as well as natural consequence thereof — one which might reasonably have been foreseen by a man of ordinary intelligence and prudence.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Reversed.*

Action to recover damages sustained by the plaintiff by reason of alleged negligence of the defendant. The complaint charges that at the time of the injury the plaintiff was an employee of the Brush Electric Light Company, which maintained, at the northwest corner of the intersection of Main and Fourth streets in La Crosse, a wooden pole, to support one end of a wire stretching across the intersection of the streets from northwest to southeast, from the center of which an electric street lamp was suspended, and, to the knowledge of the defendant, the employees of the light company were obliged to and did. climb said wooden pole to attend to such street lamp; that the defendant erected an iron post or pole close to and adjoining such wooden pole, and to which one end of a span wire was attached, which supported its trolley wire in and over the center of Fourth street, and such span wire was so near to

the wooden pole as to be dangerous to employees of the light company while climbing it, unless it was properly insulated and free from the electric current in the trolley; that the defendant negligently allowed said span wire to become charged with a powerful current from the trolley wire which it supported, and the plaintiff, a lineman of the light company, while climbing the wooden pole, without fault on his part came in contact with said span wire and said iron pole so as to form a circuit, and he received a shock which caused him to fall a distance of about twenty feet, to the ground, whereby he was seriously injured; that at the time said light company, by its agents and employees, of whom the plaintiff was one, was engaged, at the request of the defendant, the railway company, in removing the said lamp from its position. The acts of negligence relied on were: (1) The erection of said iron pole in such close proximity to the pole of the light company as to render the climbing of the latter dangerous unless the defendant's span wire was properly insulated from the trolley; (2) in operating a portion of its railway before it was fully completed, with the span wire in question uninsulated and charged with a heavy current that escaped from the trolley wire.

The answer denied the negligence charged, and averred that the defendant, at the time, had constructed and maintained its posts, trolley wires, and other appliances in accordance with the city ordinance; that at the time the light company, by the plaintiff as its employee and by its superintendent, was engaged in carrying out a contract between it and the defendant for the removal of its wires, lamps, etc., where they interfered with the erection of the defendant's line, and that while so engaged the plaintiff carelessly came in contact and connection with said span wire at a point beyond which it was insulated, and received the alleged shock; that he well knew the point at which the span wire was insulated, and the consequences of making a connection

with the same, and that he was guilty of contributory negligence.

The defendant moved for a nonsuit at the close of the plaintiff's case, which was denied, and at the close of the evidence requested the court to direct a verdict for the defendant, which the court refused. The plaintiff had a verdict and judgment, from which the defendant appealed.

The evidence was that the trolley wire and span wire and the street lamp and poles were situated as stated in the complaint, the wooden pole of the light company being about thirty feet high and ten feet higher that the iron pole, and had a return wire from the lamp to the pole, passing down it to a ratchet near the bottom, so that the lamp could be raised and lowered to renew the carbons without climbing the pole, but to remove anything that got on the wires they would have to climb the pole; and at many street intersections in the line of the defendant's trolley the light company maintained street lamps in a similar way, the position of which had to be changed when the defendant built its line, but at defendant's cost. Accordingly, the defendant entered into a contract with the light company to make such changes or removals, and it entered upon the work thereof, the defendant not interfering with or taking any part in it. The defendant had constructed its line south on Fourth street to Main street, which runs east and west, and it was intended that its line should turn upon Main street in both directions. The method of construction was that iron poles or posts were erected opposite each other on both sides of the street at intervals. Wires, called "span wires," cross the street at the top of these poles and support the main or trolley wire, which is attached to them by a "bell hanger" or "bell insulator," which, when properly constructed and in good condition, will prevent any escape of the trolley current to the span wire; and as an additional precaution, where the poles are iron, as in this case, and to guard against

any possible leakage or defect in the bell insulator, there was placed in the span wire, and between the trolley and each iron pole or post, about sixteen or eighteen inches from the post, a "circuit break," so that any current that escaped from the bell insulator would be arrested and would not reach the iron post.

The evidence was that these appliances used by the defendant were of the best kind, and in good order, and tended to show that the construction and management of the defendant's line was under the control of a competent electrical engineer. The wooden pole of the light company, in question, was crooked, inclining towards the east and south, and its base was seven or eight inches east, and a little south, of the defendant's iron pole or post. About ten feet from the ground, by reason of the crook in the wooden pole, the two were in contact, and, by reason of the inclination of the wooden pole to the south and east, there was an interval from the point between them, gradually increasing to about eight inches at the top of the iron post, and opposite the span wire,— the iron post being west and a little north of the wooden pole. The span wire, running east from the top of the iron post, passed on the north side of the wooden pole, and about three or four inches distant. The west end of the circuit break in the span wire was seven and three-fourths inches to the east of the wooden pole, and the end of the span wire east of the circuit break was thirteen and three-fourths inches from the wooden pole, and the pole could be climbed from the south or east side without coming in contact with the span wire. A person climbing the wooden pole on the north side would have to pass over the span wire, and would usually come in contact with it in some way, but only with the portion of it between the iron post and the circuit break, which was dead or uncharged; but, in case of defect in both bell insulator and circuit break, should it be charged or "live," the person coming in contact

with it, while adhering to the non-conducting wooden pole, would be safe, unless he at the same time came in contact with the iron post. The bell insulator and circuit break were in good order, and the span wire between the circuit break and the iron post which passed on the north side of the wooden pole was " dead."

When the defendant company had reached the point in question with the construction of its line, its trolley wire was attached to this span wire by the bell insulator over the center of Fourth street and on the north side of Main street, and quite a length of the trolley wire, intended to be used in curving onto Main street to the west, remained projecting south of the span wire, and was coiled up as far back as the bell insulator, and laid around and over the bell insulator, and upon the span wire and trolley wire to the north, so that, while the defendant operated its line so far as constructed, as it did continuously from August 8th to August 19th, when the accident occurred, this span wire became and was charged with the trolley current up towards said posts or poles as far as the circuit break. This coil of the trolley wire was bright new copper quarter-inch wire, about four feet in diameter, projecting two feet over on the span wire on each side, not more than twenty-two feet from the poles or posts, and in plain sight, and there was nothing to indicate that it was insulated from the span wire on which it rested. A person climbing the wooden pole of the light company could be injured by the current in the span wire in but one way, namely, by touching the span wire east of the circuit break, and at the same time touching the iron post in the opposite direction to the west, so as to form a circuit with his body between the iron post and the live span wire beyond the circuit break. After the defendant's wires had been put up, the street lamp of the light company could not be lowered, because they would come in contact, and might

cause an accident, and it was necessary to put the light away
from the defendant's wires.

At the time of the accident, McMillan, the superintendent
of the light company, with nine years' experience as an elec-
trician, and fully acquainted with the subject of insulation,
with the plaintiff, undertook to make the necessary change
in removing and changing the position of the street lamp.
The plaintiff had done nearly all this work up to this time.
He had had about five years' experience in attending to
lamps, repairing, setting poles, and other work, and had
worked about a month in changing the lamps of the light
company. He understood the method of construction and
insulation of the defendant's lines, and the subject of insula-
tion generally, had noticed both bell insulators and circuit
breaks, and knew how they were attached and what they
were for, and had examined the manner of insulating the
defendant's span wires. By direction of McMillan the plaint-
iff climbed the wooden pole on the north side, over and above
the span wire and iron post, nearly to the top of the wooden
post, drew the lamp in from the center of the street, and let
it down to McMillan, and came down the pole on the north
side, climbing over the span wire again. McMillan then
climbed the wooden pole on the east side, passed the span
wire, and prepared to hang the lamp at the side of the
wooden pole. Having occasion to let fall a piece of the lamp
wire twisted into a spiral form or coil, he dropped it, intend-
ing to let it go down on the south side of defendant's span
wire; but, for want of careful management, it caught the
span wire at a point three and one-half or four feet east of
the wooden post, and beyond the circuit break, so that from
his position he was unable to get it off. He therefore di-
rected the plaintiff to climb the pole again, and to take this
coil off the span wire. The plaintiff climbed up on the north
side of the wooden pole, as before, until his feet were about

seventeen feet above the ground, and his head was higher than the top of the iron pole. He testified: "I stood on my left spur, reached out, lifted this wire [an insulated one] off, and dropped it down, and came back to the pole, somewhere near, with the intention of getting in position, and I got caught. I supposed the span wire was a dead wire. I don't know how I made the connection by which the current went through me. I did not put my other hand on the wire. There was a burn across three fingers on the back of the right hand. The left arm or wrist was burned on the inner portion. I had not noticed the coil of trolley wire that lay coiled in part upon the span wire and in part upon the trolley. I did not see it at all. I don't remember that I had ever been at this place while the defendant was operating its line." Both the plaintiff and McMillan knew that the trolley was in operation, and cars had been running to that point for eight days. The plaintiff testified that, "if I had seen this coil of trolley wire lying upon the span wire at that point, I probably would have known and understood that the current of electricity would have been conveyed to the span wire up to the circuit break; but I don't know. . . . In order to form a circuit my bare person had to come in contact both with the iron post and the span wire. Was wearing woolen clothes. Woolen clothes against the iron post would not form a circuit, if it was dry. Clothing was dry, and the iron post too." He further testified that he lifted the wire off the span wire with his left hand, having, at the time, his right arm around the wooden pole; that he did not then take hold of the span wire or touch it with his left hand. "I got my left hand back somewhere near the pole. Can't tell you whether I was leaning against the span wire. Don't remember whether I touched the span wire or not."

For the appellant there was a brief by *Losey & Woodward* and *E. C. Higbee*, and oral argument by *G. M. Wood-*

Huber vs. The La Crosse City R. Co.

*ward.* To the point that, in order to render a negligent act the proximate cause of an injury, it must appear "that the injury was the natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of attending circumstances," they cited *Milwaukee & St. P. R. Co. v. Kellogg,* 94 U. S. 475; *Wood v. C., M. & St. P. R. Co.* 51 Wis. 196, 202; *Jackson v. Wis. Tel. Co.* 88 id. 250; *Lambeck v. G. R. & I. R. Co.* 64 N. W. Rep. 479.

For the respondent there was a brief by *Fruit & Brindley,* and oral argument by *J. J. Fruit.* They contended, *inter alia,* that the defendant owed the employees of the light company the exercise of reasonable care. *Heaven v. Pender,* 11 Q. B. Div. 503; *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141; *Martin v. North Star I. Works,* 31 Minn. 407; *Pastene v. Adams,* 49 Cal. 87; *Johnson v. N. W. Tel. Exch. Co.* 48 Minn. 433; *Burrows v. March G. & C. Co.* L. R. 5 Exch. 67; *Lane v. Atlantic Works,* 111 Mass. 136; *Stetler v. C. & N. W. R. Co.* 56 Wis. 497. The defendant's negligence was the proximate cause of the injury. *Chicago, St. P. & K. C. R. Co. v. Chambers,* 15 C. C. A. 327, 332, 333; *Giraudi v. Electric Imp. Co.* 107 Cal. 120; *Illingsworth v. Boston E. L. Co.* 161 Mass. 583; *Jackson v. Wis. Tel. Co.* 88 Wis. 243; *Ahern v. Oreg. Tel. Co.* 24 Oreg. 276; *Sturgis v. Kountz,* 165 Pa. St. 358; *Prue v. N. Y., P. & B. R. Co.* 18 R. I. 360; *Insurance Co. v. Tweed,* 7 Wall. 52. See, also, *Clements v. La. E. L. Co.* 44 La. Ann. 692; *Uggla v. West End St. R. Co.* 160 Mass. 351; *S. W. T. & T. Co. v. Robinson,* 50 Fed. Rep. 810; *Bourget v. Cambridge,* 156 Mass. 391; *Augusta R. Co. v. Andrews,* 89 Ga. 653; *S. C.* 92 id. 706.

PINNEY, J.   1. The plaintiff was engaged as a servant of the light company, and using its poles and appliances under the direction of its superintendent, performing an engagement that company had entered into with the defendant

Wis.]          JANUARY TERM, 1896.          645·

Huber vs. The La Crosse City R. Co.

company to change the location and method of hanging the
electric street lamps so that their use and management
would not interfere with or embarrass the use and operation
of the defendant's electric railway, for a consideration to be
paid by the defendant. Under the circumstances, the de-
fendant was bound to the exercise of reasonable care and
caution in the management and control of its railway, and
of the electric current which was its motive power, so as
not to injure the employees of the light company while en-
gaged in such work. It was bound to avoid acts the natural
and probable consequences of which might be to inflict in-
jury on persons thus employed, and, if it omitted such pre-
cautions as were reasonably necessary under the circum-
stances, it would be liable for such damages as any one thus
engaged might suffer, being the proximate result of such
neglect of duty. The rule was stated by BRETT, M. R., in
*Heaven v. Pender*, 11 Q. B. Div. 503, 509, that, "whenever
one person is by circumstances placed in such a position
with regard to another that every one of ordinary sense who
did think would at once recognize that, if he did not use
ordinary care and skill in his own conduct with regard to
those circumstances, he would cause danger of injury to the
person or property of the other, a duty arises to use ordi-
nary care and skill to avoid such danger." This principle
was referred to in *Zieman v. Kieckhefer E. Mfg. Co.* 90 Wis.
503, in *Bright v. Barnett & Record Co.* 88 Wis. 307, and in
*Thomas v. Winchester*, 6 N. Y. 397. In *Heaven v. Pender*,
*supra*, COTTON and BOWEN, JJ., declined to approve the view
expressed by the Master of the Rolls to its broadest extent.
But, in the subsequent case of *Thrussell v. Handyside*, 20
Q. B. Div. 359, 363, the view of BRETT, M. R., was expressly
approved; HAWKINS, J., saying "that where a man is em-
ployed to do certain work, and knows that the work he is
doing is dangerous to others and that accidents are likely
to happen, and knows that other persons are lawfully en-

gaged in other work and are under obligations to perform such work, the person engaged in the dangerous work is subject to the duty of using reasonable care and taking precautions to prevent accidents arising from the work in which he is engaged."

2. As was said by NEWMAN, J., in *Block v. Milwaukee St. R. Co.* 89 Wis. 378: "The negligence is not the proximate cause of the accident unless, under all the circumstances, the accident might have been reasonably foreseen by a man of ordinary intelligence and prudence. It is not enough to prove that the accident is the natural consequence of the negligence. It must also have been the probable consequence." *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141, 163; *Barton v. Pepin Co. Agr. Soc.* 83 Wis. 19; *McGowan v. C. & N. W. R. Co.* 91 Wis. 147. A mere failure to ward against a result which could not have been reasonably expected, is not actionable negligence. Whether the negligence of the defendant was the proximate cause of the injury, so that it and the result stand in the relation of cause and effect, is a question for the jury, where the evidence is not clear or the proper inference from undisputed evidence is in doubt. It is not, however, necessary that injury in the precise form in which it in fact resulted should have been foreseen. It is enough that it now appears to have been a natural and probable consequence. *Lane v. Atlantic Works*, 111 Mass. 136; *Hill v. Winsor*, 118 Mass. 258, 259.

The evidence on this subject is not conflicting, and the real question is as to the inferences which may be fairly drawn from the evidence, and whether they are in doubt. It appears that the defendant had substantially complied with the statute (Laws of 1889, ch. 375, sec. 1), and by bell insulators and circuit breaks had provided by suitable insulation against injury to persons or property by reason of the leakage or escape of the current of electricity from the trolley wire. The trolley wire and the span wires were sus-

tained at an elevation of about twenty feet in the air. The bell insulators were to prevent the escape of the electric current from the trolley wire, and the circuit breaks to prevent the span wires, if they should become charged from the trolley, from charging the iron posts by the sidewalks. All reasonable and proper precautions had been taken, it must be conceded, against any probable injury to persons or property in the streets or on the sidewalks or elsewhere, except, possibly, to those whose duty it was to repair and give suitable attention to the span and trolley wires of the defendant, and the wires of the light company, so far as necessary in the operation of the respective lines. All such persons were understood to be, as the plaintiff was, familiar with the application of electricity to such uses, and with the theory of insulation, as well as the use and functions of the bell insulators and circuit breaks. The introduction and use of circuit breaks must be regarded, of itself, to the apprehension and judgment of these trained and experienced operatives, as a signal of danger,— a warning that any given span wire may be charged with a heavy current from the trolley, by leakage or otherwise. They cannot come near a span wire without being thus admonished, and of the general judgment in construction that circuit breaks are necessary to secure immunity from electric shocks and to prevent the iron posts from being charged with an electric current down to the streets. These are all parts of the lines with which they are familiar. It is to be considered that they understand the peril and the provided protection as well. The plaintiff was injured because the span wire became charged by coiling, over it and the trolley wire, a portion of the latter, designed to make the curve down Main street. There was no other apparent method of disposing of it for the time being, and no reasonable grounds for supposing that any prudent and careful operative would have failed to notice it under the circumstances; and, if he did not, the cir-

cuit breaks provided protection against the charged span wire, unless he came in contact with the span wire beyond the circuit break and the iron post at the same time. This, we think, the defendant had no reasonable ground to suppose, in the present instance, that the plaintiff would do. The defendant had been operating its railway to the point in question for eight days, beyond which it had not been completed, and the plaintiff had been at work all this time and for some time previous, along the line, in changing the location of the street lamps of the light company, and knew that the trolley wire had been kept charged to operate the railway, and the defendant must have understood that he was familiar with these facts, as well as the near proximity of the iron and wooden poles, and the space between the iron poles and the outer end of the circuit break. These were obvious facts, and not to be mistaken or misunderstood. The injury could occur in only one way, as the plaintiff substantially tells us, namely, by his bare hand coming in contact with the span wire beyond the circuit break, and his other hand, or part of his bare person, coming in contact, in the same instant, with the iron post, so as to pass the electric current through him. Could the defendant have reasonably anticipated, under these circumstances, the occurrence of an accident such as this? Ought the defendant to have foreseen it, in the light of attending circumstances? We think not. It clearly appears that the use of the wooden pole in climbing up or coming down was not dangerous, nor was it possible for the plaintiff, while climbing or clinging to it, to have received a shock even by touching the charged span wire, unless he completed the circuit at the same instant by touching the iron post with his naked hand or person. The defendant had no reason to expect that an inexperienced operative would have climbed to such a point, much less that an experienced and competent one, with his knowledge of the situation at the only possible point of danger, with the

warning of the circuit break before him, would practically eliminate it as a means of safety, and, by placing his body substantially in its place, complete the electrical circuit, so that the current would necessarily pass through his body. It was not expected that he would have occasion to touch or come in contact with the span wire beyond the circuit break, or the iron post, for any purpose, and certainly not so as to complete an electrical circuit with his body.

We think the case of *Illingsworth v. Boston E. L. Co.* 161 Mass. 583, where the right of use was given to the operatives of both companies in common, for that and other reasons is distinguishable. We hold, therefore, that the evidence did not make a case to go to the jury to show that the negligence of the defendant relied on was the proximate cause of the plaintiff's injury.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

Liability for injuries by electric wires in highways is the subject of an extensive note in 31 L. R. A. 566.— REP.

---

|     |      |
| --- | ---- |
| 92  | 649  |
| 117 | ¹602 |

