## GUIDRY v. HAMLIN.
### No. 17160.

Court of Appeal of Louisiana. Orleans.
May 8, 1939.

Rehearing Denied May 22, 1939.
Writ of Certiorari Denied June 26, 1939.

Jos. Rosenberg, of New Orleans, for plaintiff-appellant.

Cyril F. Dumaine, Special Counsel, of New Orleans, for intervenor-appellant.

Curtis, Hall & Foster, of New Orleans, for appellee.

JANVIER, Judge.

Defendant, Walter B. Hamlin, is the owner of the premises No. 1512 Constance Street in New Orleans. On April 3, 1938, while the upper floor of this building was occupied under lease as a dwelling by Mr. and Mrs. Harold Guidry, their minor daughter, Barbara Ann, at that time 25½ months old, sustained injuries when she fell about 18 feet from the second story rear porch to the ground.

On her behalf her father brings this suit against Hamlin, claiming, for her use and benefit, $3,500, charging that the fall resulted from the fault of the lessor in providing a porch bannister consisting of two horizontal rails without vertical "pickets", which would have made it impossible for the child to fall. It is not alleged that any part of the gallery, or of the bannister, broke or gave way, but it is averred merely that the lower rail of the said bannister, which was parallel with the floor of the gallery, was about 19½ inches above the said floor and that, thus, there was left a space of about 19½ inches through which any such child might fall.

The child received treatment at the Charity Hospital of Louisiana at New Orleans and, therefore, the Board of Administrators of that institution, proceeding under authority of Section 1 of Act No. 230 of 1932, intervened as party-plaintiff and asserted its right, should judgment be rendered against defendant, to recover the sum of $51, by subrogation pro tanto, for the services rendered.

Since, in plaintiff's petition, there was no charge that any part of the said rail broke, defendant filed an exception of no cause of action on the theory that there is no duty in a lessor, or in an owner of improved property, to provide any particular kind of porch rail and that, since the rail which was provided did not break or prove defective, there could be no liability in the owner of the property. This exception was overruled.

After a trial on the merits, judgment was rendered for defendant. The judge a quo rendered written reasons for his conclusion, among which we find the following:

"I have thoroughly gone into the law. The plaintiff has not charged any defective condition but merely alleged that there was an opening in the porch railing which permitted the child to fall through. I am firmly of the opinion that when you lease the premises in good sound condition, you lease it as is and assume any risk. The child did not lease the premises, and when the father and mother leased it, the parents assumed the risk for and on behalf of the minor child. I can not see that there was any faulty construction, but I wanted to give the plaintiff an opportunity to go to the Court of Appeal with a complete record."

From the judgment, plaintiff has appealed, as has the intervenor.

In the brief submitted in this court on behalf of the principal appellant, it is stated that the judgment was rendered on exception of no cause of action. This, as we have stated, is not correct, the judgment having been rendered only after a trial on the merits.

There is practically no dispute on the facts. The bannister is shown to have consisted of two parallel rails, as alleged, the lower, however, 18 inches above the floor instead of 19½ inches, as charged, and the upper a foot or so above the lower. There are no upright "pickets" or other rails attached to these parallel horizontal rails and there is thus left open a space 18 inches high between the gallery floor and the lower edge of the lower rail. This bannister, consisting of the two rails described, was, on the day of the accident, in identically the same condition in which it was at the time the father of the injured child leased the premises.

The record makes it reasonably certain that the child fell under the lower rail and not over it and, since so young a child is incapable of being negligent in a legal sense, the question of law presented is whether an owner of property, who provides such a rail, is negligent to such an extent as to render himself liable for injuries so sustained.

Plaintiff, in his brief, relies upon Articles 2322, 2692 and 2693 of the Civil Code, and maintains that under any or all of these articles the said property owner is liable. These articles read as follows:

2322. "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."

2692. "The lessor is bound from the very nature of the contract, and without any clause to that effect:

"1. To deliver the thing leased to the lessee.

"2. To maintain the thing in a condition such as to serve for the use for which it is hired.

"3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease."

2693. "The lessor is bound to deliver the thing in good condition, and free from any repairs. He ought to make, during the continuance of the lease, all the repairs which may accidentally become necessary; except those which the tenant is bound to make as hereafter directed."

 Article 2322 obviously has no application, for, if there is anything wrong about the rail provided, it is evident that it is the design which is complained of and not the fact that any part of it was weak or gave way. Thus Article 2322 does not apply to the situation for the reason that that article, like C.C. art. 670, has no reference to any situation except that in which some part of the building collapses, or breaks, or gives way. We note the word "ruin" as it appears in Article 2322 and the word "fall" in Art. 670. The owner is not made liable under either article because there is a "vice" in original construction, unless there is a "ruin" of the building under the one article, or a "fall" of some part of the building under the other. If the framers of the Code had intended to make liability, under either of these articles, depend upon the dangerous design of the building—which is complained of here —they would not have provided that the liability should be made to depend upon the "ruin", or upon the "fall" of some part thereof. Art. 2322 is taken directly from the French Civil Code, in which (in Art. 1386) appears the identical word "ruin" ("ruine"). In the translation of the French Civil Code made by Henry Cachard, who is recognized as an authority on French translation, this word "ruin" appears as "destruction".

 We conclude that, if there is any liability here, it is not under Art. 2322, nor under Art. 670, since no part of the building broke, or gave way, or was destroyed, and since the only complaint which appears is based on defective design and not on collapse due to defect in original construction.

 Let us next consider whether there is any liability because of violation of those obligations placed upon the lessor by Arts. 2692 and 2693. We will assume, for the moment, that the child of a tenant may rely upon those articles as placing upon the lessor obligations in favor of anyone other than the tenant himself, and, in view of what we said in Heath v. Suburban Building & Loan Association, La.App., 163 So. 546, and of what the Supreme Court said in Ciaccio v. Carbajal, 142 La. 125, 128, 76 So. 583, there is some doubt as to whether anyone other than the tenant himself may rely upon those articles. Nevertheless, for the moment assuming that these articles create in a third person a right to complain, the only requirement which might to any extent be considered pertinent here is that the thing leased must be in condition suitable for the purpose for which it was leased. It is apparent that the rail in question was perfectly safe for all persons except those so young or so small as to require special care and attention. There is nothing dangerous to the normal person in such a rail. There is danger only if there is involved one so young as to be incapable of exercising care, and, in the case of so young a person, everyone is justified in assuming that special attention, or care, or supervision, will be afforded by parents or others in authority. The rail provided here is identical with rails found in numerous other buildings, and, in fact, the evidence, without contradiction, shows that it was built in accordance with specifications of the building code. Just what building code is referred to we are not told. But, in the absence of evidence to the contrary, we assume that reference is had to some legally adopted code of the City or of the State.

 In Caulfield v. Saba, La.App., 144 So. 907, we considered whether a lessor is under obligation to provide any particular type of building and quoted with ap-

proval from 36 Corpus Juris, § 893, page 215, the following:

"On the analogy of the lack of a common law duty on the part of a landlord to light common passageways, it has been held that a landlord is not liable for injuries received by tenant through the failure of the landlord to supply railings or guards when the condition was the same at the time of the letting."

We are in accord with this view. There is no duty in the owner of a building, whether to his tenant, or to anyone rightfully within the building, to provide any particular type of construction, unless, of course, the rail, or the stair, or the floor, which is complained of, obviously provides a trap, or is dangerous even to the reasonably prudent person. It is true that, under Art. 2315 of the Civil Code, liability to any person, whether tenant or anyone else rightfully on the premises, might result from negligence in creating such a trap as we have referred to; but, surely, even that article cannot be construed as placing upon a house owner liability merely because he does not make his building foolproof, or because he does not so construct it as to make it impossible for infants to injure themselves. There is no negligence because, surely, such a house owner may assume that such very young children will be protected by older persons responsible for them. This gallery was merely a very narrow passageway and could not in any sense be said to resemble a playground, or a play porch on which young children might be expected to play.

We think that very pertinent here is the thought expressed by the Supreme Court in Biegel v. City of New Orleans, 143 La. 1077, 79 So. 867:

" * * * The municipal authorities have a right to presume that, for every child under the age of discretion, there is some one of mature judgment on whom rests the special duty and responsibility for the safety of the child."

▮ Surely, one who leases a building even for residential purposes and even if he knows that the family of the tenant includes young children, may assume that those in authority will protect such young children and will see to it that they are not permitted to wander alone on galleries, or in other places from which they might fall.

We do not base freedom from liability upon the contributory negligence of the parents, but solely upon the fact that there is no negligence in the owner of the building in failing to foresee that the parents will not protect their very young children against such dangers.

It is ordered, adjudged and decreed that the judgment appealed from be and it is affirmed.

Affirmed.