The lower court in a written opinion has set forth the issues in this case and correctly determined them as follows:
"This is a personal injury action for damages arising out of an accident in the Town of Oak Grove in which Mrs. T.J. Riche was struck on the head by a falling sign on March 25, 1939. Mrs. Riche was walking on the sidewalk in front of Thompson's Hardware, owned by E.L. Thompson, the defendant, when she met an unknown boy, running or skipping, who jumped up and hit a sign which fell on her head, striking her above the right eye about the hair line. This sign belonged to defendant. It was about 5 feet long, 12 inches wide and 2 inches thick, made of wood. It was suspended a little over 6 feet 6 inches above the sidewalk, by means of two eye hooks in the ceiling and two `goose neck' hooks in the top of the sign. This action is taken by Mr. and Mrs. T.J. Riche to recover a total of $32,897.60 of E.L. Thompson, who had erected and maintained the sign.
"There seems to be no doubt but that the sign was struck and knocked loose at one end by a boy running along the sidewalk in front of Thompson's Store. Therefore, there is no doubt but that this act of the boy was the proximate cause of any injury suffered by Mrs. Riche. It is not contended that Mr. Thompson was responsible in any way for this act, but it is contended that the sign was negligently fastened to the ceiling and therefore that he is responsible for any injuries received. If there was negligence in erecting and maintaining the sign, then that would also be a proximate or concurring cause and the defendant would be liable in damages. Therefore the only question to be determined is whether or not there was actionable negligence in the manner in which the sign was first installed, since there is no claim that any change was made between the time of its first installation and the date of the accident.
"Mr. Grady Bagwell sold this sign to defendant and erected it for him. He explains that he used the `goose neck' hooks in the top of the sign, and almost completely closed them when the work was completed. He explained that they were not completely closed so that the sign could be removed, if desired, on such occasions as Hallowe'en night. He says that he has sold practically all of the signs in Oak Grove and that this one was installed in the usual manner, not only for this Town, but for other sections of the State.
"Mr. Harry McKoin, offered by plaintiffs as an expert, says that it was not suspended in a safe way, demonstrating how it should have been done, but he did say it was in the customary manner for the Town of Oak *Page 568 
Grove and that it was probably suspended in the safest manner of any sign inspected by him in this Town. This, of course, does not absolve defendant for he would be responsible if he had not exercised reasonable diligence, even though all the other merchants may also have failed to take the proper precautions. He was responsible for any negligence on the part of Mr. Bagwell.
"The sign-board, with its fastenings, was brought into court. Various witnesses were asked to disengage the hooks, and all agreed that it was difficult to do. It was also apparent to the Court that no ordinary lick could have knocked the sign down. Plaintiff and his witnesses said that the hooks were in the same condition as when first installed and at the time of the accident. This was not seriously disputed and we take it to be true.
"It has been held properly that anything suspended above a sidewalk should be securely fastened or the owner will be held in damages for any injury that could have been foreseen by the exercise of reasonable diligence. In this case it might possibly have been foreseen or anticipated that someone (as a child) might jump up and tap the sign to see it swing back and forth. Yet from observing the fastenings, we are convinced that no such lick, which might reasonably have been anticipated, would have disengaged the hooks in this case. Of course, we are unable to say how hard a lick was delivered by this boy but one witness states that he heard the lick by the child's hand or hands and then he heard the sign hit the ceiling over the sidewalk. Several witnesses say that the sign would have had to be hit hard enough for it to hit the ceiling and rebound before it could possibly have fallen.
"Inasmuch as we are unable to find where the defendant was negligent in erecting the sign in front of his place of business, we, of course, must decide the issue against plaintiffs.
"It is therefore ordered, adjudged and decreed that there be judgment herein in favor of defendant and therefore plaintiffs' suit is hereby dismissed at their cost.
"Done, read and signed in open court on this the 18th day of February, 1941."
Plaintiffs are prosecuting this appeal from a judgment based on that opinion in which plaintiffs' demands were rejected.
The record is voluminous and we have given much time and study to it. We have examined all the authorities cited and are convinced the lower court has correctly disposed of the case.
Plaintiffs contend here that the sign was not erected in a safe manner or it would not have fallen and call attention to the testimony of Mr. Bagwell, who erected the sign, wherein he testified that it could have been made safer. This is, no doubt, true. It could have been erected, as he also testified, in such a manner that the building or shed would have had to be torn down in order to remove the sign. Such a degree of safety or security against harm to a passerby is not required of an owner of a building.
The sign, together with the screws by which it was hung to the ceiling over the walk, was offered in evidence and it was shown that it had not been altered or changed in any manner. It was exactly as it was when hanging. The lower court commented upon the force necessary to remove the eye screws from the gooseneck screws. The same exhibit is before us and we have attempted to unloose or disengage the screws and find that the screws on the side of the sign, which were not disengaged when plaintiff was struck by the sign, can be disengaged by the use of force and while we do not doubt that the end which came loose and fell on plaintiff can by force be disengaged, one screw from the other, we were unable to do it.
An examination of the sign and the manner in which it was hung convinces us that it was safe and we doubt if one trying to make it fall in the manner it did, by striking it in passing, would be successful in a thousand trials.
It must be borne in mind that no part of the sign or screws gave way or broke, only the gooseneck screw nearest the building came out of the eye screw fastened into the ceiling. The only way this could possibly have happened was for force to have been used and applied to the sign sufficient to have moved the bottom of it upward and at a certain angle and with force sufficient to cause the nearly closed gooseneck screw to be forced out of the eye of the screw attached to the ceiling, or as happened in this case, to knock the sign hard enough to force the bottom of it to strike the ceiling and rebound, bottomside up, with sufficient force to cause the hook neck screw to come loose from the eye screw. The sign could have been swung to and fro without any danger or chance of its falling until such time as friction would have *Page 569 
worn one or the other of the screws in two. We fail to find any negligence in the way the sign was hung or in leaving it hanging in that condition.
The owner of a building owes a duty to the public not to injure any passerby through negligence in construction or maintenance of his building in an unsafe condition, but a test of actionable negligence in such cases is not what the owner of the building could have done to prevent the injury and accident, but what a reasonable, prudent and careful person would have done under the circumstances.
The owner of a building is not the insurer against injury of all who might pass or enter. He is required only to exercise ordinary and reasonable care for their protection. Bartell v. Serio, La.App., 180 So. 460, 461; and many cases cited therein from this and other jurisdictions.
The Supreme Court of this State in New Orleans N.E.R. Company v. McEwen Murray, 49 La.Ann. 1184, 22 So. 675, 680, 38 L.R.A. 134, said:
"Negligence consists in a failure to provide against the ordinary occurrences of life, and the fact that the provision made is insufficient as against an event such as may happen once in a lifetime, or perhaps twice in a century, does not * * * make out a case of negligence upon which an action in damages will lie."
In the same case our Supreme Court quoted with approval from the case of Huber v. LaCrosse City Railway Company, 92 Wis. 636, 66 N.W. 708, 31 L.R.A. 583, 53 Am.St.Rep. 940, decided by the Supreme Court of Wisconsin, affirming what it had said in Block v. Milwaukee St. Railway Company, 89 Wis. 371, 61 N.W. 1101, 27 L.R.A. 365, 46 Am.St.Rep. 849, as follows:
"The negligence is not the proximate cause of the accident, unless, * * * under all the circumstances, the accident might have been reasonably foreseen by a man of ordinary intelligence and prudence. It is not enough to prove that the accident is the natural consequence of the negligence. It must also have been the probable consequence. * * * A mere failure to ward against a result which could not have been reasonably anticipated is not actionable negligence."
Plaintiffs contend that the record shows that it was not unusual for school children to jump up and slap the overhanging signs in passing down the street and that it was common knowledge that they do so. Admitting the truth of this contention, there was no proof of any instance where the sign had been struck with such force as to dislodge it from its moorings and no reasonable and prudent man would anticipate that a sign hanging as was defendant's sign would be struck with sufficient force by a passing boy as to dislodge it. The manner in which the sign was hung and maintained by defendant was only a remote cause of the accident and not a proximate cause.
The judgment of the lower court is correct and is affirmed with costs.