**SOUTHERN FARM BUREAU CASUAL-TY INSURANCE COMPANY,**
Appellant,

v.

**Barbara McRee McKENZIE et al.,**
Appellees.

No. 16797.

United States Court of Appeals
Fifth Circuit.

Feb. 14, 1958.

Rehearing Denied April 4, 1958.

Charles D. Egan, Frank M. Cook, Shreveport, La., for appellant.

Paul R. Mayer, Charles E. Tooke, Jr., Casper A. Tooke, Jr., Shreveport, La., for appellee McKenzie.

John R. Pleasant, Shreveport, La., for Dewey Young.

Before BORAH, TUTTLE and CAMERON, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal from a judgment entered on a jury verdict in favor of plaintiff, Barbara McRee McKenzie, individually and as tutrix of her two minor children, in an action brought against Southern Farm Bureau Casualty Insurance Company, under the Louisiana Direct Action Statute,[1] to recover damages for the wrongful death of her husband Paul McKenzie who was electrocuted while working in the home of defendant's insured, Wilbur Sibley. In addition, defendant also appeals from a judgment which was entered pursuant to an order of the District Court dismissing without prejudice its third-party complaint.

The facts which give rise to the present controversy are these: In January 1954, Wilbur Sibley contracted with Dewey Young, a competent electrical contractor, to change the lighting arrangement in the Sibley residence which was located near the City of Shreveport, in Caddo Parish, Louisiana. In the performance of this contract and while working in the attic over the carport where the head clearance between the ceiling joists and the rafters was only some three to four feet, Young or his workmen found it necessary to execute a splice in the electrical wiring by joining together two Romex cables and then taping the joint with insulating tape. After the cables were joined together in this fashion, the splice came to rest on the top of a ceiling joist and was there left exposed without being enclosed in a metal junction box. All of which was unknown to Sibley because he had no occasion to enter the attic or to observe the wiring conditions which existed there until after the accident in question.

Following the completion of this job by the electrical contractor and after a lapse of several months, Sibley engaged Radalec, Inc. to install a heating system and related metal duct work in his residence. Paul McKenzie, an experienced sheet metal worker employed by Radalec as a fourth year apprentice, together with his brother James, a helper, was assigned to do this work. And on August 9, 1954, after first inspecting the attic to determine where to lay the metal ducts,

1. LSA–R.S. of 1950, 22:655, as amended by Act 541 of 1950.

they began the work of installing them. For the first two days Paul and his brother worked together in the cramped quarters of the attic and nothing unusual happened. On the afternoon of the third day, at about 4:00 p. m., James McKenzie, on Paul's instructions, left the attic to get from their supply truck certain additional materials which were needed for the job, and upon returning with the required materials, he found Paul lying unconscious with his left shoulder against a galvanized iron vent pipe and another portion of his body resting on the sheet metal duct work. Upon touching his brother's leg, James felt an electrical shock, whereupon and with the aid of his foot he pushed Paul's shoulder away from the vent pipe, thus enabling him with the assistance of a third person to remove his injured brother from the attic. Shortly thereafter Paul died without regaining consciousness.

Following the fatal accident, the within complaint was filed against defendant, the general premises liability insurer of Wilbur Sibley, in which it was alleged that the decedent met his death from a charge of electricity which entered the duct work through an improperly and inadequately insulated and protected splice in an electrical wire located in the attic of the Sibley home. More specifically, it was alleged that Sibley was negligent in permitting the installation and continued existence of the inadequate and defective splice in the electric wiring system without giving warning to the decedent; in having and permitting to exist an electrical installation of a hazardous nature in said attic; and in failing to keep and maintain his premises in a safe condition "for persons whom he did invite and induce to be in and about the same."

Thereafter and following referral to the merits of its motion to dismiss, the defendant filed responsive pleadings in which it denied that Sibley was guilty of the acts of negligence charged or of any negligence which resulted in McKenzie's death, and affirmatively alleged that Sibley had no knowledge of the existence of the splice. In the alternative, it was alleged that the decedent was guilty of contributory negligence in that with knowledge of the "position and status" of the wiring which was clearly visible to him, he negligently placed, pulled, and attempted to install a metal duct across and on a portion of the wiring, negligently damaging the same.

The defendant, with leave of court, also filed a third-party complaint against Dewey Young seeking judgment over against Young, in the event the defendant should be held liable, on the ground that the electrical wiring was installed under Young's sole supervision and control pursuant to a contract with defendant's insured, and that if any danger or defect existed therein it was caused by the negligence of Young or his employees. Attached to the third-party complaint was an act of subrogation executed by Sibley in favor of the third-party plaintiff transferring all rights of Sibley against the third-party defendant in contract, indemnity or tort in connection with the death of Paul McKenzie.

Following the filing of this additional pleading, the third-party defendant moved to dismiss the third-party complaint on the ground, among others, that the defendant insurance company had made no payment to or on behalf of its insured and therefore no right of subrogation existed. The District Court denied the motion to dismiss and after the filing of an answer by Young to the third-party complaint, the court on consideration of the third-party defendant's motion for separate trial ordered that the case be tried first between the plaintiff and the defendant, with the understanding that should plaintiff prevail, the case between the third-party plaintiff and third-party defendant would then be tried by the same jury.

In accordance with this ruling, the case came on for trial before the court and jury, and at the conclusion of plaintiff's evidence and later at the close of all of the evidence, defendant moved successively and unsuccessfully for a directed verdict on the grounds: (1) that the evi-

dence showed no actionable negligence on the part of defendant's insured; (2) that the record affirmatively showed that the decedent was guilty of contributory negligence; and (3) that Barbara McRee McKenzie, wife of the decedent, is not entitled to assert a direct action against defendant as insurer since she is not one of the persons named in LSA–R.S. 22:-655. Upon return of the jury's verdict for plaintiff, individually and as tutrix of the minors, the trial court discharged the jury and dismissed the third-party complaint without prejudice on the ground that it was brought prematurely. Thereafter, and following the entry of judgment on the jury verdict, the trial court dismissed defendant's motion to set aside judgment and for judgment in accordance with its motion for directed verdict, and this appeal followed.

■■■ Appellant is here relying on numerous assignments of error. Without cataloging them, we shall first consider the specification that the decedent's widow was not among that class of persons entitled, under LSA–R.S. 22:655 as amended by Act 541 of 1950, to bring a direct action against appellant as insurer. The statute then provided, in pertinent part, that:

"the injured person or his or her heirs, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy * * * and said action may be brought against the insurer alone or against both the in-

sured and the insurer, jointly and in solido."

We have been cited to no reported case and none have we been able to find wherein this question has been considered.[2] However, we are in no doubt that when this suit was instituted the appellee as the surviving spouse of the decedent was entitled to bring this action. To conclude otherwise would be tantamount to saying that the legislature intended to and did repeal the well-established right, under LSA–Civil Code, Article 2315, of the surviving spouse to bring an action for wrongful death in cases where minor children survive the decedent.[3] Obviously no such legislative intent is inferable from wording of the statute, for there is nothing on its face which suggests an intention to diminish the class of "survivors" who, under LSA–Civil Code, Article 2315, are entitled to bring an action for wrongful death.

Appellant also claims that the trial court erred in denying its motions for directed verdict and for judgment n. o. v. on the grounds that Article 2322 of the LSA–Civil Code which imposes absolute liability on the owner of a building for damage occasioned by its ruin "when this is caused by neglect to repair it, or when it is the result of a vice in its original construction" is wholly inapplicable under the facts of this case, and that the evidence failed to show any actionable negligence under Article 2315 of the LSA–Civil Code on the part of Wilbur Sibley. We have carefully examined the

2. See Benroth v. Continental Casualty Company, D.C., 132 F.Supp. 270, 277, in which the court commented with reference to R.S. 22:655: "In another case we held that 'injured person' includes the 'survivors' mentioned in article 2315 of the LSA–Civil Code."

3. Article 2315, in pertinent part provides: "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it; the right of this action shall survive in case of death in favor of the children, including adopted children and children given in adoption, or spouse of the deceased,

or either of them, and in default of these in favor of the surviving father and mother or either of them, and in default of any of the above persons, then in favor of the surviving blood brothers and sisters, or either of them, for the space of one year from the death. However, *should the deceased leave a surviving spouse, together with minor children, the right of action shall accrue to both the surviving spouse and the minor children. The right of action shall accrue to the major children only in those cases where there is no surviving spouse or minor child or children.*" (Emphasis supplied.)

record and are of the clear opinion that appellant's motions should have been granted.

The case was tried below on the theory that appellant was liable to appellees under both Article 2322 and Article 2315 of the LSA–Civil Code. Article 2322 reads as follows: "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction." The key word in the article which permits or forbids its application to a given set of facts is "ruin", a word which has been used by the Louisiana legislature interchangeably[4] with its Latin origin, "falling down." Franks v. Suthon, C.C., 159 F. 174. This codal article thus makes the owner of a building answerable for the damage "occasioned by its ruin—i. e., fall or collapse—whether such is due to structural vice or neglect to repair." Hero v. Hankins, 5 Cir., 247 F. 664, 666. Likewise and to the same effect is Guidry v. Hamlin, La. App., 188 So. 662, 664, wherein the Orleans Court of Appeal in a well considered opinion said:

> "We note the word 'ruin' as it appeared in Article 2322 and the word 'fall' in Art. 670. The owner is not made liable under either article because there is a 'vice' in original construction, unless there is a 'ruin' of the building under the one article, or a 'fall' of some part of the building under the other. If the framers of the Code had intended to make liability, under either of these articles, depend upon the dangerous design of the building—which is complained of here—they would not have provided that the liability should be made to depend upon the 'ruin', or upon the 'fall' of some part thereof. Art. 2322 is taken directly from the French Civil Code, in which (in Art.

1386) appear the identical word 'ruin' ('ruine'). In the translation of the French Civil Code made by Henry Cachard, who is recognized as an authority on French translation, this word 'ruin' appears as 'destruction.' "

Here there was no showing of a "ruin, fall, or collapse" which occasioned damage, and under Article 2322 a home owner is not subject to liability without fault for *all* damage which may be occasioned by a defective condition on the premises, but only for that damage occasioned by ruin. Guidry v. Hamlin, supra, is a clear example of the refusal of the Louisiana courts to apply the rule of absolute liability expressed in this article to a non-ruin fact situation. In our consideration of the immediate problem at hand, we have read all of the numerous decisions cited under Article 2322 and are aware of the few landlord and tenant cases wherein the Louisiana courts have applied this article to fact situations not involving "ruin." But those cases, Davis v. Hochfelder, 153 La. 183, 95 So. 598, Gaida v. Hourgettes, La.App., 67 So.2d 737, and the like, are inapposite here, for there the courts were not considering the liability of a *home owner,* but as was pointed out by the Supreme Court in describing the effect of its holding in the Davis case, were concerned only with whether a lessor could be held liable to his tenant's guest "because of the violation on the part of the lessor of his primary obligation [under Civil Code Article 2693] to keep his building safe." (Brackets ours.) Lasyone v. Zenoria Lumber Co., 163 La. 185, 111 So. 670, 672. Consequently, and in view of the prior construction placed upon this article by the Louisiana courts and this Court, we think it plain, despite the unfortunate dictum which appears in some of the cases, that no liability could be imposed upon appellant under Article 2322.

---

4. Article 22, Louisiana Civil Code of 1808, from which Article 2322 was derived reads as follows: "The owner of a house is responsible for the damage occasioned by its falling down, when that has happened in consequence of it not having kept it in repair, or through a defect in its construction." Cf. Articles 670 and 671 of the 1870 Civil Code.

Likewise, we are of opinion that there was no showing made below that Sibley was guilty of any negligence under Article 2315 of the LSA–Civil Code which provides, in pertinent part, as follows: "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it * * *" In Louisiana, the owner of a building owes a duty to his invitees not to injure them through negligence in construction or maintenance of his building in an unsafe condition, but the test of actionable negligence in such cases is not what he could have done to prevent the injury and accident, but what a reasonable, prudent and careful person would have done under the circumstances. Riche v. Thompson, La.App., 6 So.2d 566. We have carefully examined the record in this case and find not one scintilla of evidence that Sibley had any knowledge of the splice in question or the manner in which the wiring was installed in his attic. On the contrary, the affirmative testimony is to the effect that he did not know and, in fact, that he had never seen the wiring. Having hired a competent contractor who enjoyed a good reputation in the community and was as "good as any you can get," Sibley had every reason to believe that the wiring had been installed in a safe and workmanlike manner. This being so, we hold that the trial court erred in refusing to grant appellant's motions for directed verdict and for judgment n. o. v. for the reason that there was no showing that Sibley knew or in the exercise of ordinary care should have known of the allegedly defective splice.

Having concluded that the matter was not for submission to the jury, but should have been disposed of by the court by an instructed verdict, there is no need for us to consider appellant's further assignments of error. It follows that the judgment which was entered on the jury verdict must be reversed, the judgment dismissing the third-party complaint affirmed, and the cause remanded to the District Court with directions to enter judgment in favor of appellant, Southern Farm Bureau Casualty Insurance Company and against appellees.

Reversed in part, affirmed in part and remanded with directions.