Inez Milagros **QUINTANILLA**

v.

**CHATEAU LOUISIANE, INC.**, et al.

**Civ. A. No. 73–619.**

United States District Court,
E. D. Louisiana.

April 11, 1975.

er, and Maryland Casualty Company as insurer of an executive officer of The Royal Orleans, Inc. d/b/a The Royal Sonesta Hotel, a Mr. Duffy.[1] Plaintiff claimed that she fell while working as a dishwasher in the kitchen of The Royal Sonesta Hotel, injuring her back. The cause of her fall was the alleged deficient condition of a certain "duck board" upon which she was standing.

The Court bifurcated the issues of liability and quantum, and, after the submission of all evidence on the question of liability during two days of trial, the Court directed a verdict in favor of Chateau Louisiane, Inc. and Maryland Casualty Company in its capacity as insurer of Chateau Louisiane, Inc., dismissing plaintiff's claim against those parties, and presented to the jury the issues of the liability of Maryland Casualty Company as insurer of Mr. Duffy and plaintiff's contributory negligence.

After approximately three hours of deliberation, the jury returned a verdict of no liability, which verdict was made the judgment of the Court.

Upon completion of the presentation of evidence on liability, there were many factual issues which were no longer in dispute:

1. Defendant, Chateau Louisiane, Inc., was the owner and lessor of the building known as The Royal Sonesta Hotel.

2. Defendant, The Royal Orleans, Inc. d/b/a The Royal Sonesta Hotel was:

   a) The lessee of the building owned by defendant Chateau Louisiane, Inc.

   b) The employer of plaintiff, Inez M. Quintanilla.

   c) The employer of the person who ordered the construction and installation of the "duck board" on which plaintiff was working when she fell.

Philip E. Henderson, Henderson, Hanemann & Morris, Houma, La., Neville G. Orrett, New Orleans, La., for plaintiff.

Lawrence J. Ernst, Christovich & Kearney, New Orleans, La., for defendants.

## REASONS IN SUPPORT OF THE GRANTING OF MOTIONS FOR A DIRECTED VERDICT

R. BLAKE WEST, District Judge.

### BACKGROUND

Plaintiff, Inez M. Quintanilla, brought suit for damages for personal injuries against Chateau Louisiane, Inc. and Maryland Casualty Company, its insur-

---

1. Ms. Quintanilla previously received workmen's compensation benefits and medical expenses from the insurer of her employer, The Royal Orleans, Inc. d/b/a The Royal Sonesta Hotel.

d) The employer of the carpenter who built and installed the allegedly defective "duck board".

e) The company of which Mr. Duffy was president at the time of the accident.

3. Defendant Maryland Casualty Company was, at the time of the accident:

a) The insurer of defendant Chateau Louisiane, Inc.

b) The insurer of Mr. Duffy in his capacity as an executive officer of The Royal Orleans, Inc. d/b/a The Royal Sonesta Hotel.

4. Plaintiff, Inez M. Quintanilla, was employed by The Royal Orleans, Inc. d/b/a The Royal Sonesta Hotel and worked as a dishwasher in the kitchen of The Royal Sonesta Hotel.

5. On or about February 19, 1970, plaintiff was standing on the "duck board" in question when she fell, sustaining injuries to her back.

6. Neither defendant Chateau Louisiane, Inc., nor its insurer, defendant Maryland Casualty Company, had anything whatsoever to do with the design, construction, or installation of the "duck board" herein involved, and had no knowledge whatsoever, either direct or indirect, about it.

7. The "duck board" herein involved was not attached to the building in any manner, but simply rested on the floor of the kitchen; nor was it a part of the original construction of the building.

8. The "duck board" did not collapse or fall or break at the time of the injury, although there was testimony that it may have wobbled.

On the basis of these undisputed facts, the Court, for the following reasons, granted the motions of Chateau Louisiane, Inc. and its insurer, Maryland Casualty Company, for a directed verdict.

Plaintiff's case against the movers was based upon a dual theory of strict liability: Chateau Louisiane, Inc. was liable to plaintiff either as the lessor or as the owner of the building in which plaintiff was working when she was injured.

## NON–LIABILITY AS LESSOR

■ First, counsel for plaintiff argued that the provisions of Louisiana Civil Code Articles 2693 and 2695 provide a basis for the application of strict liability to her claim against Chateau Louisiane as landlord of The Royal Sonesta Hotel and its insurer. The basic flaw in counsel's argument is that, by their plain terms, the articles in question simply do not vest in third parties (specifically, employees of the tenant) rights against a non-negligent lessor.[2]

Articles 2693 and 2695 provide:

"Art. 2693. The lessor is bound to deliver the thing in good condition, and free from any repairs. He ought to make, during the continuance of the lease, all the repairs which may accidentally become necessary; except those which the tenant is bound to make, as hereafter directed."

"Art. 2695. The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects,

---

2. Counsel for plaintiff argued that, since under the jurisprudence, statutory obligations running between landlord and tenant (LSA–C.C. Art. 2693 and LSA–C.C. Art. 2695) also run in favor of the tenant's wife and family, Crawford v. Magnolia, 4 So.2d 48 (La.App.1941), the same obligations should run in favor of the employee of a corporate tenant against its lessor. The argument, although ingenious, is unsupported by the jurisprudence.

the lessor shall be bound to indemnify him for the same."

In Cheatham v. Bohrer, 17 So.2d 492, 494 (La.App.1944) the Court of Appeal for the Parish of Orleans stated:

". . . the rights of a tenant to recover for injuries are controlled by Articles 2693–2695 of our Civil Code which impose certain obligations upon the lessor in favor of the lessee, but which obligations do not run in favor of a third person . . .

[O]ther obligations are imposed by law, Civil Code, Articles 670, 2315, 2322, upon the house owner, not as lessor, but merely because of his ownership, . . ."

The distinction between the contractual obligations relative to lessor and lessee and the legal obligation arising from ownership of property as to all persons was the subject of a comment in the Louisiana Law Review entitled Responsibility of Landlord and Tenant for Damages from Defects in Leased Premises, by Ben Miller, in which Mr. Miller concluded that the provisions of Civil Code Articles 2693 and 2695 properly deal only with the mutual rights and obligations of a lessor and his tenant, and

not with the rights of third persons not parties to the lease.[3]

The Court was of the opinion that the evidence presented was insufficient, viewed in a light most favorable to the plaintiff, to support a jury verdict based upon the theory of strict liability under Civil Code Articles 2693 and 2695. Therefore, the motions of Chateau Louisiane, Inc. and Maryland Casualty Company for a directed verdict, dismissing plaintiff's claim under the Articles in question, were granted.[4]

## NON–LIABILITY AS OWNER

■ Plaintiff's second bite at the strict liability apple is based upon Civil Code Article 2322 [5] which provides:

"Art. 2322. The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."

Under the jurisprudence, "By the term 'ruin of a building', as used in this Article, is meant the collapse, the fall, or the giving way of the whole or of some part of the building whereby some person is injured." [6] Frank v. Suthon, 159 F. 174, 178 (E.D.La.1908).

3. " . . . [T]he Louisiana courts during one period held that a third person lawfully on the premises stood in the shoes of the lessee in invoking the provisions of this article, apparently on the basis that the lease contemplated third persons would come onto the premises. It appears, however, that the courts have returned to the apparent meaning of the article and now hold that it operates only in favor of the lessee." 20 La.L. Rev. 76, 77 (1959).

4. In accordance with the Court's decision to grant a directed verdict, there was no need to consider whether or not a jury finding that the "duck board" was a *thing delivered* within the meaning of Article 2693, could be supported by the evidence. Likewise, there was no need to consider whether or not a jury finding that the "duck board" was *a vice not arising from the fault of the lessee* within the meaning of Article 2695, could be supported by the evidence.

5. Louisiana Civil Code Article 670 provides: "Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or

passengers (sic), under the penalty of all losses and damages, which may result from the neglect of the owner in that respect."

Article 670 makes applicable the doctrine of strict liability as to owners of buildings relative to third persons such as "neighbors and passers-by" for injuries occasioned by the falling of the building, but that Article is clearly not applicable in the case at bar, and its applicability has not been urged by the plaintiff.

6. Plaintiff argues that the contract between Chateau Louisiane, Inc. and its tenant, The Royal Orleans, Inc. d/b/a The Royal Sonesta, Paragraph 7(c), pp. 14 and 15, whereby all equipment of the hotel becomes the property of the landlord, transferred the "duck board" into the landlord's property, and therefore made it part of the building for the purpose of tort liability as to third persons. As we have held, there was no "ruin" of the building within the meaning of Article 2322. Furthermore, the contract between the lessor and lessee could have no effect on the issue of tort liability of the owner to third persons.

In Southern Farm Bureau Cas. Ins. Co. v. McKenzie, 252 F.2d 195, 199 (C.5, 1958), the court stated:

"The case was tried below on the theory that appellant was liable to appellees under both Article 2322 and Article 2315 of the LSA–Civil Code. Article 2322 reads as follows: 'The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.' The key word in the article which permits or forbids its application to a given set of facts is 'ruin', a word which has been used by the Louisiana legislature interchangeably with its Latin origin, 'falling down'. Franks (sic) v. Suthon, C.C., 159 F. 174. This codal article thus makes the owner of a building answerable for the damage 'occasioned by its ruin—i. e., fall or collapse— whether such is due to structural vice or neglect to repair.' Hero v. Hankins, 5 Cir., 247 F. 664, 666. Likewise and to the same effect is Guidry v. Hamlin, La.App., 188 So. 662, 664, wherein the Orleans Court of Appeal in a well considered opinion said:

'We note the word "ruin" as it appeared in Article 2322 and the word "fall" in Art. 670. The owner is not made liable under either article because there is a "vice" in original construction, unless there is a "ruin" of the building under the one article, or a "fall" of some part of the building under the other. If the framers of the Code had intended to make liability, under either of these articles, depend upon the dangerous design of the building— which is complained of here—they would not have provided that the liability should be made to depend upon the "ruin", or upon the "fall" of some part thereof. Art. 2322 is taken directly from the French Civil Code, in which (in Art. 1386) appear the identical word "ruin" ("ruine"). In the translation of the French Civil Code made by Henry Cachard, who is recognized as an authority on French translation, this word "ruin" appears as "destruction".'

Here there was no showing of a 'ruin, fall, or collapse' which occasioned damage, and under Article 2322 a home owner is not subject to liability without fault for *all* damage which may be occasioned by a defective condition on the premises, but only for that damage occasioned by ruin. Guidry v. Hamlin, supra, is a clear example of the refusal of the Louisiana courts to apply the rule of absolute liability expressed in this article to a non-ruin fact situation. In our consideration of the immediate problem at hand, we have read all of the numerous decisions cited under Article 2322 and are aware of the few landlord and tenant cases wherein the Louisiana courts have applied this article to fact situations not involving 'ruin.' But those cases, Davis v. Hochfelder, 153 La. 183, 95 So. 598, Gaida v. Hourgettes, La.App., 67 So. 2d 737, and the like, are inapposite here, for there the courts were not considering the liability of a *home owner*, but as was pointed out by the Supreme Court in describing the effect of its holding in the Davis case, were concerned only with whether a lessor could be held liable to his tenant's guest 'because of the violation on the part of the lessor of his primary obligation [under Civil Code Article 2693] to keep his building safe.' (Brackets ours.) Lasyone v. Zenoria Lumber Co., 163 La. 185, 111 So. 670, 672. Consequently, and in view of the prior construction placed upon this article by the Louisiana courts and this Court, we think it plain, despite the unfortunate dictum which appears in some of the cases, that no liability could be imposed upon appellant under Article 2322."

It is the opinion of the Court that Article 2322 is of no help to plain-

tiff. The Article clearly provides for strict liability of the owner of a building to a third party under circumstances which involve "ruin" as defined by the Louisiana law. The Court found that there was insufficient evidence to support a jury verdict that the alleged accident occurred in a manner, viewing the evidence in a light most favorable to the plaintiff, which would constitute a. collapse or falling of some part of the building, or a vice in its original construction.[7]

Therefore, the motions of Chateau Louisiane, Inc. and Maryland Casualty Company for a directed verdict, dismissing plaintiff's claim based upon Article 2322, were granted, as were the motions based upon Articles 2693 and 2695.[8]

7. Under the jurisprudence, in order for Article 2322 to apply, the "duck board" involved in this case must have been an "appurtenance" of the hotel building.

In support of the contention that the "duck board" was an appurtenance of the building under Article 2322, the case principally relied upon by plaintiff is Adamson v. Westinghouse Electric Corp., 236 So.2d 556 (La.App. C. 4, 1970), in which an elevator door malfunctioned, causing injury. It seems abundantly clear that there is a distinction between an elevator which is part of a building and the "duck board" in this case which is not part of the building. The same distinction exists between a gas heater which was involved in a personal injury in the case of Davis v. Hochfelder, 153 La. 183, 95 So. 598 (1923) and the "duck board" herein involved.

Other authority cited by the plaintiff in the requested jury instructions, in support of the contention that the "duck board" was an "appurtenance" of the building, would not have supported the giving of such an instruction to the jury, nor would the authorities cited support a jury finding that the "duck board" was an appurtenance of the building which would be necessary for a finding of liability under Article 2322.

8. The only remaining theory of liability with regard to Chateau Louisiane and its insurer available to plaintiff is one sounding in tort under Article 2315 of the Louisiana Civil Code. No allegation of negligence on the part of movers was made, and no evidence was adduced to support such a claim.

"Likewise, we are of opinion that there was no showing made below that Sibley was guilty of any negligence under Article 2315 of the LSA–Civil Code which provides, in pertinent part, as follows: 'Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it * * *' In Louisiana, the owner of a building owes a duty to his invitees not to injure them through negligence in construction or maintenance of his building in an unsafe condition, but the test of actionable negligence in such cases is not what he could have done to prevent the injury and accident, but what a reasonable, prudent and careful person would have done under the circumstances. Riche v. Thompson, La.App., 6 So.2d 566. We have carefully examined the record in this case and find not one scintilla of evidence that Sibley had any knowledge of the splice in question or the manner in which the wiring was installed in his attic. On the contrary, the affirmative testimony is to the effect that he did not know and, in fact, that he had never seen the wiring. Having hired a competent contractor who enjoyed a good reputation in the community and was as 'good as any you can get', Sibley had every reason to believe that the wiring had been installed in a safe and workmanlike manner. This being so, we hold that the trial court erred in refusing to grant appellant's motions for directed verdict and for judgment n. o. v. for the reason that there was no showing that Sibley knew or in the exercise of ordinary care should have known of the allegedly defective splice." Southern Farm Bureau Cas. Ins. Co. v. McKenzie, 252 F.2d 195 (C.5, 1958).