(95 South. 598)

No. 23623.

## DAVIS v. HOCHFELDER.

(Jan. 27, 1923.   Rehearing Denied Feb. 26, 1923.)

*(Syllabus by Editorial Staff.)*

**1. Landlord and tenant ☜164(1)—Immaterial that hot water heater without vent was installed by former tenant or had been used without accident.**

Where hot water heater was negligently installed without vent, and had become landlord's property, and was part of the property leased to a tenant, it was immaterial that it was installed by a former tenant, or had been used for a considerable period without accident.

**2. Landlord and tenant ☜164(6)—Immaterial that landlord did not know anything about proper method of installing hot water heaters.**

Where hot water heater was negligently installed without vent, it was immaterial that the landlord knew nothing about the proper installation of such heaters, especially where members of tenant's family were equally uninformed.

**3. Landlord and tenant ☜168(1)—Members of tenant's family entitled to presume hot water heater safe for use.**

Where hot water heater was on leased premises, and included in lease, members of the tenant's family had a right to presume that it was safe to use it in the condition in which furnished for use by the landlord.

**4. Landlord and tenant ☜164(1)—Lessee's wife may recover for injuries caused by lessor's failure to keep buildings safe.**

Under Civ. Code, art. 2322, lessee's wife may recover against lessor for personal injuries received through lessor's violation of his primary obligation to keep his building safe.

**5. Landlord and tenant ☜168(1)—Lessee and family not negligent in using hot water heater not having vent.**

A lessee and his wife and son were not guilty of contributory negligence in using hot water heater without vent or pipe, which was part of the property leased, they being uninformed as to the proper installation of such heaters.

**6. Landlord and tenant ☜168(1)—Tenant's wife not negligent in breaking glass door with her hands to rescue son unconscious from asphyxiation.**

Where tenant's son was unconscious in bathtub, and in imminent danger of drowning or death from asphyxiation, his mother, who was frantic at gurgling sounds coming from bathroom, *held* not contributorily negligent in breaking glass panel of door with her naked hands.

**7. Landlord and tenant ☜164(1)—Landlord's negligence held proximate cause of injury sustained in rescuing son unconscious from asphyxiation.**

Landlord's negligence in failing to equip hot water heater in bathroom with vent or pipe was proximate cause of injury to tenant's wife sustained in breaking the door to rescue her son, who was unconscious from asphyxiation.

**8. Damages ☜97—$500 allowed for cuts and nervous shock sustained in rescuing son who was unconscious from asphyxiation.**

Where plaintiff cut her arm severely in breaking glass door to rescue her son, who was unconscious in bathroom from asphyxiation, and infection resulted, and she also sustained a severe nervous shock, $500 *held* a proper amount of damages.

O'Niell, C. J., dissenting.

Appeal from Civil District Court, Parish of Orleans; H. C. Cage, Judge.

Action by Mrs. Lyda G. Davis, wife of Jefferson E. Davis, against Max Hochfelder. From a judgment for defendant, plaintiff appeals. Judgment annulled, avoided and reversed, and judgment granted in favor of plaintiff.

Wm. H. Byrnes, Jr., of New Orleans, for appellant.

A. D. Danziger, of New Orleans, for appellee.

LAND, J.   The husband of plaintiff leased premises No. 1634, Terpsichore street, in the city of New Orleans, from defendant, the owner. There was a Humphrey's hot water heater in the bathroom of the house when the lessee and his wife and son took posses-

sion of the place on September 1, 1916. This heater had been installed without a vent by a former tenant of defendant, and, under an agreement with this tenant, became the property of the landlord on October 1, 1916; the occupancy of these premises by Jefferson E. Davis and his family for the month of September, 1916, being under a sublease for that month from the former tenant of defendant, and after that period under a direct lease from the defendant.

On the morning of November 11, 1916, during the continuance of this lease, the 16 year old son of plaintiff became asphyxiated in the bathtub in the bathroom where this heater had been installed. Plaintiff discovered her son in an unconscious condition, lying in the bathtub, with the water dangerously near his mouth, after forcing an entrance into the bathroom through the glass panel in the bathroom door, which was locked. She broke the glass with her bare hands, and with the assistance of the neighbors rescued her son, who was finally resuscitated by the use of a pulmotor.

Plaintiff, suing in her own right, alleges that in effecting the rescue aforesaid, and in breaking the glass in the said door, she severely and painfully cut her arm, elbow, and third finger on her left hand; that she received severe mental shock at seeing her child in the condition in which she found him in the bathtub, unconscious, and almost drowned; and that a large and disfiguring scar will remain permanently on petitioner's arm.

Alleging that said wound became infected, and that she was confined for a period of five weeks, unable to attend to her household duties, that she has not recovered from the nervous shock received, and is still in a very nervous state, plaintiff seeks to recover in this suit the sum of $5,000 as damages against defendant, charging that said accident and the resulting injuries to herself were due solely and only to the gross negligence of defendant in installing or permitting to be installed in said bathroom, a gas water heater without a vent or pipe, all of the gas fumes emitted by said heater remaining in the bathroom because of this defect.

Defendant denies the negligence charged against him by plaintiff, and alleges that said heater was in perfect order; that plaintiff's son blew out the gas instead of turning it off, and that, if he sustained injuries, it was his own fault; that, if plaintiff herein was injured, it was due to her own negligence in breaking the glass with her bare hands; and that in no event, under the terms of said lease, can plaintiff recover. The testimony in the case shows conclusively that plaintiff's son was asphyxiated by monoxide gas, or fumes from the combustion of gases burned in the hot water heater in this bathroom.

The lower judge finds this as a fact in his written opinion in this case.

The testimony of experts at the trial shows that a vent or pipe to this heater is necessary to carry off these noxious fumes, which are dangerous to life if permitted to escape, especially in a small room like a bathroom.

It is not disputed that the hot water heater was not equipped with a vent or pipe.

[1] The defense that plaintiff's son blew out the gas of this heater, instead of turning it off, is without any foundation whatever, as the proof conclusively shows that the gas was turned off. The testimony showing that this heater was negligently installed, that it had become the property of the defendant landlord at the date of this accident and injury, and that it was a part of the property leased to the husband of plaintiff, an accessory to the bathroom used by the tenant and his family, it is unimportant that this heater had been installed by a former tenant of the defendant, that this tenant had used this heater without a vent for a considerable period, and that the present tenant had used

the same during the months of September and October, 1916, and thereafter, without an accident.

[2, 3] It is also unimportant that the defendant landlord knew nothing about the proper installation of hot 'water heaters. The testimony shows that plaintiff and the members of her family were as equally uninformed upon this subject. The heater being on the leased premises and included in the lease, plaintiff and her family had a right to presume that it was safe to use it in the condition in which it had been furnished for use by the landlord.

[4] That the wife of the lessee may recover damages against the lessor for personal injuries received by her through violation of the lessor's primary obligation to keep his building safe is well settled in our jurisprudence.

In the case of Schoppel v. Daly, 112 La. 201, 36 South. 322, in interpreting article 2322 of the Civil Code, this court held that the wife had an action in her own legal right ex delicto under it, independently altogether of the lease contract.

Article 2322 reads as follows:

"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."

We said in the case of Ciaccio v. Carbajal, 142 La. 125, 76 South. 583:

"We know of no provision of law making an exception to said articles 2315 and 2322 by which their scope should be limited so as not to include the members of a lessee's family or the guests or other persons on the leased premises by invitation of the lessee. As to a person other than the wife the scope of the article was so extended in Cristadoro v. Von Behren, 119 La. 1025, 44 South. 852, 17 L. R. A. (N. S.) 1161."

We said also in the Ciaccio Case above cited:

"A lessee who has suffered injury from a defect he knew of, and could have remedied at the expense of the lessor, has to a large extent himself to blame; he has contributed to his injury; the maxim 'volenti non fit injuria' may to some extent be applicable to him; whereas a member of his family or a guest upon the premises at his invitation, who did not have the same right and opportunity to remedy the defect and is entirely blameless, occupies an entirely different legal position. It would be rather a stretching of things to say to these persons that they should have induced the lessee to exercise his right to remedy the defect at the expense of the lessor." 142 La. 128, 76 South. 584.

[5] Neither the lessee nor his wife nor his son were guilty of contributory negligence in using this heater without a vent or pipe.

[6] Nor, in our opinion, was the plaintiff guilty of contributory negligence in breaking the glass panel of the bathroom with her naked hands. This door was locked, and the window of the bathroom was down. The only means of entrance at her immediate command was through the glass panel of this door. Her son was prostrate in the bathtub, unconscious from asphyxiation, and the water in the tub had almost reached his mouth. Had his body in the tub slipped downward, he would have drowned before he could have been rescued. Death from asphyxiation was also imminent. The plaintiff became frantic at the gurgling sounds that came from the bathroom. The intense excitement of the moment and the imperative necessity for instant action naturally robbed her mind of calm reflection and sober judgment. The question of the life or death of her son seemed to her to hang by a mere thread. The rescuer of a person in imminent danger must necessarily take some risk of bodily harm. The ordinary rules of negligence do not apply to such cases.

That it is not rashness to voluntarily incur great danger to save another in peril is expressly decided by the Supreme Court of Ohio in Pa. Co. v. Langendorf, 48 Ohio St. 316, 322, 28 N. E. 172, 174 (13 L. R. A. 190, 29 Am. St. Rep. 553). The court said:

"There was but the fraction of a minute in which to resolve and act, or action would come too late. Under these circumstances it would be unreasonable to require a deliberate judgment from one in a position to afford relief. To require one so situated to stop and weigh the danger to himself, of an attempt to rescue another, and compare it with that overhanging the person to be rescued, would be, in effect, to deny the right of rescue altogether, if the danger was imminent. * * *

"And the doctrine that one who, under those or similar circumstances, springs to the rescue of another, thereby encountering even great danger to himself, is guilty of negligence per se, is neither supported by principle nor authority."

In the case of Eckert v. Long Island R. Co., 43 N. Y. 503, 3 Am. Rep. 721, the leading case upon the subject, the court said:

"Negligence implies some act of commission or omission wrongful in itself. Under the circumstances in which defendant was placed, it was not wrongful in him to make every effort in his power to rescue the child, compatible with a reasonable regard for his own safety. It was his duty to exercise his judgment as to whether he could save the child without serious damage to himself. If, from the appearances, he believed that he could, it was not negligence to make an attempt so to do although believing that he might fail and receive an injury to himself."

"He had no time for deliberation. He must act instantly, if at all, as a moment's delay would have been fatal to the child. The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness, in the judgment of prudent persons."

See, also, Whitworth v. Shreveport Belt Ry. Co., 112 La. 363, 36 South. 414, 65 L. R. A. 129.

[7] As plaintiff was not in fault under the facts of this case in going to the rescue of her son, but was acting under a high sense of moral duty and maternal affection, she is entitled to recover damages for the injuries received by her in the performance of that duty occasioned by the negligence of defendant in failing to equip the hot water heater with a proper vent or pipe, so as to prevent the escape into the bathroom of noxious fumes.

The plaintiff being without fault in making the rescue of her son, the negligence of the defendant was the proximate cause of plaintiff's injury.

[8] It only remains for us to fix the quantum of damages.

The physician who assisted plaintiff in removing her son from the bathroom was dead at the time of this trial. We find no medical testimony in the record as to the extent or seriousness of the cuts received by plaintiff on her arm when she forced her way into the bathroom through the glass panel of the bathroom door.

Plaintiff's uncontradicted testimony is as follows:

"I cut my arm severely and almost severed an artery in the right arm climbing through the door, and cut my elbow on the glass, and cut my finger. Of course, with the anxiety about my son, I did not get my arm attended to like it should have been, until he was out of danger, and my arm became infected, and for a time, I thought I would lose my arm, and for five weeks, I was in very bad condition.

"Q. Will you show the judge your arm?

"A. There are the cuts I received. (The witness showing her right arm to the judge.)"

Another witness in the case saw blood on plaintiff's arm at the time her son was rescued.

There evidently was severe nervous shock at the time, and plaintiff testified that she had not gotten over it at the date of the trial.

The record fails to disclose the size or permanency of the scars on plaintiff's arm.

Under this state of facts, we feel that an award of $500 in damages will meet the ends of justice.

Plaintiff's demand was rejected by the lower court under a misapprehension as to the law governing the case.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be

annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of plaintiff and against defendant in the sum of $500, with legal interest from date of judicial demand. Defendant to pay all costs.

O'NIELL, C. J., dissents.