62 So.2d 686 (1953)
PREUETT
v.
STATE through DEPARTMENT OF HIGHWAYS et al.
No. 7852.
Court of Appeal of Louisiana, Second Circuit.
January 7, 1953.
Rehearing Denied January 30, 1953.
*687 Lemuel C. Parker, W. Crosby Pegues, Jr., D. Ross Banister, Philip K. Jones and Joseph A. Loret, Baton Rouge, for appellant.
Moss & Wright, Winnfield, W. T. McCain, Colfax, for appellee.
HARDY, Judge.
This is a suit for personal injuries in which the defendants are named as being the State of Louisiana, through the Department of Highways of the State of Louisiana, and the Department of Highways of the State of Louisiana. After trial there was judgment in favor of plaintiff and against the defendant, The State of Louisiana through the Department of Highways of the State of Louisiana, in the principal sum of $35,000, interest and costs. From this judgment the named defendant has appealed. Plaintiff has answered the appeal, seeking the amendment of the judgment by increasing the amount thereof to the sum of $50,000, as originally prayed.
This is a companion suit to one against the same defendants in which the plaintiff is Henry A. Preuett, husband of the plaintiff in this cause, in which the said named husband sued for reimbursement of expenditures necessitated by the injury to his wife, for future medical expenses and other items. The cases were consolidated for trial and for purposes of submission on appeal. La.App., 62 So.2d 693.
Plaintiff brought this suit under the authority of House Bill No. 145, which was passed by the Legislature of the State of Louisiana at the session of 1950, and subsequently vetoed by the Governor of the State of Louisiana. The validity of the authorization for suit has been attacked by counsel for defendant in numerous exceptions, namely an exception to the jurisdiction of the court ratione personae, an exception to the jurisdiction of the court ratione materiae, an exception of immunity from suit, and an exception of no right nor cause of action, all of which were overruled by the district court, but all of which are strenuously re-urged on appeal.
Plaintiff's action arises from an accident which occurred about the hour of 7:00 A.M. on June 21, 1948, on Louisiana Highway No. 19 at a point approximately twelve miles east of Colfax. At the time plaintiff was a passenger in a 1½ ton 1937 model Chevrolet flat-bed truck owned and driven by her husband, Henry A. Preuett. The husband, a farmer by occupation, was engaged in transporting a truckload of cantaloupes to market and was driving in an easterly direction on Highway 19 toward the town of Bentley, in Grant Parish, Louisiana.
The accident occurred on a bridge, the approaches to which structure at either end *688 were curves. The road is a gravel highway and it was established that, on Friday preceding the Monday on which the accident occurred, a road crew, under the direction of an employee of the State Department of Highways, whose capacity was that of a unit foreman, had covered the bridge with what was described as being a mixture of sand, clay and gravel. The flooring of the bridge, according to the testimony, was constructed of creosoted timbers which were old and in bad condition, hence the necessity for the protective covering of gravel. There were large cracks between the flooring timbers, and the employee in charge testified that he was convinced at the time, due to the exceedingly dry weather, the gravel mixture would sift down between the cracks of the bridge flooring and leave an extremely rough corrugated condition on the surface of the bridge. This is what actually occurred, and, over the week-end, traffic across the bridge had brought about this condition to such a degree that, at the time of the accident early Monday morning, the road across the bridge consisted of a consecutive series of hills and hollows, the depressions being some four to six inches in depth.
Henry A. Preuett, driving his truck along the highway, rounded the curve at the western approach of the bridge and, upon striking the corrugations described, the steering wheel of the vehicle was momentarily wrenched from his control and both he and his wife were violently thrown from the seat of the truck cab against the doors, which flew open and precipitated plaintiff wife to the highway. Mrs. Preuett's foot was caught in the door of the cab and she was dragged some distance until her foot became dislodged. Thereupon she fell entirely to the surface of the roadway and the right rear wheel of the truck passed over the upper torso of her body. Her husband meantime had gained a measure of control of the vehicle but realized the danger of applying the brakes and was helpless to avoid running over the body of his wife. He brought the truck to a stop on the shoulder of the road past the eastern end of the bridge. Plaintiff suffered injuries of an unusually serious nature, which will be hereinafter more particularly described.
In her petition plaintiff alleges, as grounds for recovery against defendants, that the employees of the highway department knew, or should have known, that the covering used for surfacing the bridge would become rough, corrugated and unsafe for traffic; that her injuries were caused solely by the negligence, carelessness and want of skill of the department's employees acting in the scope of their employment. Plaintiff itemized her claims for damages in the total sum of $50,000 as being:

"1. Past pain and
 suffering $15,000.00
 2. Pain and suffering
 to be undergone in
 the future 25,000.00
 3. Loss of her ability
 to maintain and care
 for her own household 10,000.00"

Little conflict of testimony was developed on trial. Plaintiff presented her case with reference to the facts of the accident through the testimony of some ten or twelve witnesses. No evidence was tendered on behalf of defendants, who relied upon the establishment of factual defenses through cross-examination of plaintiff's witnesses.
Other facts having some material bearing upon the issue of negligence as established on trial were to the effect that the bridge surface had been uniformly smooth and uncovered prior to the action of the highway employees in placing the gravel covering over the flooring of the bridge on Friday, June 18th; that after receiving information concerning the accident on Monday, June 21st, the employees of the Highway Commission immediately removed the gravel which remained upon the bridge flooring; that the surface of the highway approaching the bridge was smooth and in good condition; that the rough and dangerous condition existing on the bridge was not apparent to approaching motorists; that the highway at this point was subjected to reasonably heavy traffic; that *689 a number of other motorists experienced the rough and dangerous condition existing, some of them being severely jolted from their seats, the force of the impact being such as caused vehicles to swerve from one side to the other of the highway; that in one or two instances motorists who had come in contact with the rough and dangerous condition made return trips by circuitous routes in order to avoid subjecting themselves to the danger for a second time; that no inspection was made by employees of the highway department following the covering operation until after a report of the accident; that no caution nor warning signs were displayed.
On appeal before this court industrious counsel for defendant has assigned thirty separate specifications of error with respect to the judgment of the district court. Careful examination of these assignments indicates that they are repetitious, and, in the final analysis, may be reduced to three essentials; namely, reliance upon the State's immunity from suit; freedom from actionable negligence on the part of the highway department, its agents and employees, and the assertion of contributory negligence on the part of the driver of the Preuett truck. We further reduce the points at issue by observing that the plea of contributory negligence has not been urged before this court and we consider the same to be abandoned and properly so since in our opinion no facts were established which would sustain such a charge.
Counsel for defendant submits that the question of immunity from suit has been properly raised by one or more of the exceptions. We can perceive no useful purpose to be served in discussing the merit of the arguments advanced with respect to the technical propriety of the various exceptions in tendering the issue of immunity. It suffices for our purpose that we willingly concede that the issue has been presented and is correctly before the court.
The burden of defendant's argument is that the immunity from suit which is an attribute of sovereignty inherently possessed by the State of Louisiana has not been constitutionally waived by the passage of House Bill No. 145 of 1950 upon which plaintiff relies. The facts bearing upon this point are undisputed, namely that the bill was passed by both the House and the Senate of the Legislature of the State of Louisiana, submitted to the Governor and by him vetoed. It is urged that notwithstanding the fact that the right of waiver of immunity is vested in the Legislature, nonetheless when a legislative directive is submitted to and vetoed by the chief executive such action has the effect of avoiding such an expression of the legislative will.
We do not think this position is tenable. Authorization for suits against the State is specifically provided by Section 35 of Article 3 of the Constitution of 1921, as amended. After covering the requirements with reference to citation, designation of courts in which suit may be filed, waiver of prescription, procedure, etc., the section specifically declares:
"Except as otherwise specially provided in this section, the effect of any authorization by the Legislature for a suit against the State shall be nothing more than a waiver of the State's immunity from suit insofar as the suit so authorized is concerned." (Emphasis by the court.)
The Supreme Court of the State has construed this provision in Lewis v. State of Louisiana, 207 La. 194, 20 So.2d 917, and Jefferson Lake Sulphur Co. v. State of Louisiana, 213 La. 1, 34 So.2d 331. In these cases the court held that there was no necessity for submission of waiver of immunity to the Governor. In the Jefferson Lake case the identical factual situation existed as is present in the instant case, that is, the bill waiving immunity, though passed by both houses of the Legislature, was vetoed by the Governor. We find nothing in the instant case nor in the arguments advanced which would raise any real point of difference or distinction, and, accordingly, we need only observe that in our opinion the question has been definitely set at rest by the *690 holdings in the above cited cases of the Supreme Court. The conclusion necessarily follows that the action of the Legislature as expressed in House Bill No. 145, passed by both House and Senate, is a valid and constitutional expression of the legislative will, is completely efficacious with respect to granting the waiver of immunity from suit on the part of the State and is entirely unaffected by the Governor's veto.
Adverting to a consideration of the merits of the case, we observe that we are generally in agreement with the majority of the legal principles which are urged on behalf of the defendant to the effect that the Department of Highways is not an insurer of the safety of travelers; is not under any obligation to maintain the highway system in perfect condition; and that, generally, the agency is responsible only for the maintenance of the highways in a reasonably safe condition. We further accord in principle with the proposition advanced in Millstead v. City of New Orleans, La.App., 146 So. 492, to the effect that a street or sidewalk may be deemed to be in reasonably safe condition when the majority of the people using such thoroughfare do so without being injured. But we appreciate and interpret the holding in the Millstead case, under the facts there established, to mean simply that an unusual and inconvenient roughness of surface conditions does not in itself and by itself sustain the charge of negligence against the agency responsible for its maintenance. However, we reiterate the oft-enunciated rule that the resolution of the question of negligence vel non must in the final analysis depend upon the established facts in each individual case.
Recapitulation of the pertinent facts in the instant case indicates that the existing condition of the passageway over the bridge was the result of the negligence of agents and employees of the Department of Highways; that such negligence created an unusual and dangerous condition; that this negligence was enhanced by further negligence of failure to observe the development of a dangerous condition and to warn the traveling public thereof. In other words, we are here confronted with a developing condition which comprehended negligence of both commission and omission. It is well established by his own testimony that the foreman in charge of the highway maintenance work was well aware of the inefficient and unsubstantial nature of the covering operation and the resulting rought surface which would develop from the use of the sand, clay, gravel mixture over the bridge flooring. It is further to be observed that the point of danger, by reason of its location, was one which was not calculated to be apparent to the traveling public. Here we are impressed with a very marked distinction from the facts in the Millstead case, which involved a detour on a street which was observably dangerous, by reason of its condition, unless negotiated with the utmost precaution. In the instant case the undisputed testimony demonstrates the fact that the highway itself, that is the gravel road approaching the bridge, was in good condition and the point of danger escaped the attention of motorists because of its peculiar location, and further because there was no indication of the dangerous condition either by physical surroundings or warning precautions.
With reference to the contention that the condition was not dangerous because this was the only accident which occurred, we are constrained to observe that this point has been rather aptly covered by an observation of the highway foreman in his testimony, who stated:
"Ain't nothing dangerous unless you have an accident."
There must always be a first accident, and the fact that this was the first does not militate against the conclusion of negligence. The testimony of a number of other witnesses to the effect that they had been jostled and thrown about in their vehicles upon encountering the same condition at the same point is affirmative evidence of the danger of the condition. The mere fact that none of these witnesses suffered an accident is not proof of a reasonably safe condition.
We think the facts in this case are strikingly similar to those which were adduced *691 in De Hart v. State, La.App., 46 So.2d 366, in which the installation of a culvert across a highway resulted in the creation of a hazard which the court held could not be reasonably perceived by a motorist even though using due care.
We further observe that the condition which was the ultimate cause of the accident in the instant case was one which grew progressively worse and more dangerous with the passage of time and the substantial traffic on the highway. Even as it is the last straw which breaks the back of the camel, it may have been here the last erosive influence upon a few pebbles of gravel and grains of sand which finally effected the danger.
Summing up the circumstances which caused and contributed to the accident under consideration, we conclude that the agents and employees of the Department of Highways of the State of Louisiana were guilty of negligence in that (1) by their operations they deliberately created a condition which ultimately constituted a dangerous hazard to the traveling public; (2) no warning was given to the traveling public of the progressively increasing dangerous condition. Under these circumstances we are firmly of the opinion that the charges of negligence as made by plaintiff have been adequately and satisfactorily established.
It is urged on behalf of defendant that the existence of a defect in a highway that may cause an accident will not sustain a charge of negligence if the highway is reasonably safe in spite of the existence of the defect, citing White v. City of Alexandria, 216 La. 308, 43 So.2d 618; Millstead v. City of New Orleans, La.App., 146 So. 492; Jones v. City of Baton Rouge, La.App., 191 So. 734; McGurk v. City of Shreveport, La.App., 2 So.2d 687; Massicot v. City of New Orleans, La.App., 43 So. 2d 621.
Reference to the cited cases reveals such a difference in factual circumstances as to make them entirely inappropriate as authority in the instant case. It is also to be observed that in each instance with respect to the cited cases emphasis is placed upon the accepted rule that the defect in question was apparent to a reasonably prudent user of the highway or sidewalk. We have attempted to point out the fact in the case before us that the defects in the bridgeway were not apparent. There is not the slightest foundation for a holding of negligence on the part of the driver of the Preuett truck and there is no substantiation for a conclusion that he was in any degree lacking in reasonable caution.
It might be considered and urged that the development of the dangerous condition was unforeseeable and as a consequence that defendant should be exonerated of liability. We think this proposition has been adequately disposed of in the opinion of this court in Lynch v. Fisher, La.App., 34 So.2d 513, 518, from which we quote as follows:
"Finally, consideration must be given to the application vel non of the general rule that one is not responsible for those particular injurious consequences which are unforeseen, improbable and not reasonably to have been expected to result from the original act of negligence.
"We think it is well established that the general doctrine of foreseeability is not applicable to the extent of relieving one who sets in motion, through the agency of a negligent act, a chain of circumstances leading to the final resultant injury. In Payne v. Georgetown Lumber Co., Ltd., 117 La. 983, 42 So. 475, 477, the Court said:
"`That the particular injurious consequence was "improbable" or "not to be reasonably expected" is no defense. Wharton, Law of Negligence (2d Ed.) § 77. The same writer says:
"`"The fact is, that the consequences of negligence are almost invariably surprises. A man may be negligent in a particular matter a thousand times without mischief; yet, though the chance of mischief is only one in a thousand, we would continue to hold that the mischief, when it occurs, is imputable to the negligence."'
"This expression of opinion has been adhered to in Atkins v. Bush, 141 La. *692 180, 74 So. 897, L.R.A.1917E, 809; Davis v. Hochfelder, 153 La. 183, 95 So. 598; Lasyone v. Zenoria Lumber Co., 163 La. 185, 111 So. 670; and Finney v. Banner Cleaners & Dyers, 13 La.App. 101, 126 So. 573.
"We make no attempt to minimize the unusual and improbable character of the incident which is alleged to have occurred in the case before us.
"The facts set forth are additional evidence of the truth of the adage that `truth is stranger than fiction'.
"We do not believe that the theory of foreseeability is applicable to the facts of this case. Referring again to the Restatement of the Law of Torts, we find in Section 435 a plain and unambiguous statement of the principle which refutes the requirement of foreseeability: `If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.'"
The remaining consideration in this cause involves the determination of the quantum of damages. As heretofore observed in this opinion, the district court awarded damages to this plaintiff in the sum of $35,000. And in answer to this appeal plaintiff has prayed for an increase in this award to the sum of $50,000 as originally prayed. Our learned brother of the district court has succinctly and accurately expressed the nature and effect of plaintiff's injuries in these words:
"Mrs. Preuett suffered injuries of maximum severity. At least ten ribs were fractured on both sides, some in two places. The 12th dorsal vertebra sustained a compression fracture with displacement, resulting in the severing of the spinal cord. This has left Mrs. Preuett completely paralyzed below the site of the fracture, with no control of her bowels and her kidneys and no function of her legs. She has been hospitalized an aggregate of approximately ten months, has otherwise been bedridden all of the time, and will be a complete invalid for the rest of her life. She requires constant use of a catheter and enemas and must receive attention from other persons to provide all of her simplest bodily functions. To sum it up, she has sustained almost the maximum physical injuries which a living person could endure. Her pain and suffering have been of an extreme nature and will be great throughout her entire life. Without attempting to divide the award between the three elements set forth in plaintiff's petition, it is considered that $35,000.00 is an appropriate sum at which to fix the damages for Mrs. Preuett."
There is little that can or need be added to the observations of the district judge. Plaintiff has suffered injuries of such nature and degree as are almost unimaginable. That she has lived is one of those miracles defying physical laws which must be accepted as proof of the existence of a God whose ways and plans are inscrutable to finite minds.
We forbear discussion of obvious details. It suffices to say that plaintiff, hopelessly bedridden, will be in need of constant expert medical and nursing care and attention for the remainder of her life. Whether that life will endure for a day, a decade, or longer, is an unanswerable question. Certainly no human being could be adequately compensated in money for the agony which this plaintiff has already experienced. It therefore cannot be considered that any judgment could be regarded as being in the nature of anything approaching adequate compensation. Under existing economic conditions the high cost of constant medical care and attention which will be necessary in this case is a matter of common knowledge. The total incapacity, the acute pain and discomfort of the living death which has been and will be experienced by plaintiff are indescribable. The nature, degree and effects of plaintiff's injuries in this case exceed anything within the experience of the members of this court. Under these circumstances we think the judgment should be increased as prayed by plaintiff.
*693 For the reasons assigned the judgment from which appealed is amended by increasing the amount thereof to the sum of $50,000, and as amended it is affirmed.