On Rehearing
McBRIDE, Judge.
In their application for a rehearing counsel for the plaintiffs, among other things, suggested that we erred in the finding of certain facts, and in order to allow plaintiffs every opportunity to point out any errors, factual or otherwise, we agreed to a rehearing in the matter.
The case has been masterfully argued and briefed, and after again studying the record very closely, we must come to the same conclusions we reached after the first hearing.
If there is liability in defendants, such would result from LSA-C.C. arts. 670, 2315, and 2322, the pertinent parts of which read as follows:
“Art. 670. Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers, under the penalty of all losses and damages, which may result from the neglect of the owner in that respect.”
“Art. 2315. Every act whatever of man that causes damage to another, obliges him by, whose fault it happened to repair it; * * *.”
“Art. 2322. The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.”
See Davis v. Hochfelder, 153 La. 183, 95 So. 598; Cheatham v. Bohrer, La.App., 17 So.2d 492, and Gaida v. Hourgettes, La.App., 67 So.2d 737.
In order to recover, therefore, the burden is upon the plaintiffs to make their case legally certain by proving that there was a defect in the heater in the bathroom in which the asphyxiations took place and that as a result of this defect, the child of plaintiffs met her unfortunate death. We said in our original opinion and we now reiterate that the water heater in the bathroom, which was antiquated, was defective in that it did not possess a safety cut-off valve.
Unquestionably this was a very serious defect. The record shows that the purpose of such valve is to automatically stop the flow of gas in the event the pilot light is extinguished so that there would be no *346 gas emitted by the burners when there is no flame to consume it.
Under the circumstances as appear from the record, we can hardly conceive that the pilot light was eve'r extinguished so that unburned gas flowed into the small room for the simple reason, as we stated before, that the water heater is an instantaneous one and the moment there was no flame to heat the coils, the flow of hot water was not possible. When the members of the police force arrived at the premises some time after the accident, they found the water in the tub was still hot, and if cold water had been flowing from the heater as a result of the extinguishment of the pilot, it is an axiomatic fact that this would have manifested itself by making the water in the tub cold. The police officers say the water was extremely hot. Another fact is that the neighbor who rushed into the bathroom almost immediately after the room was broken into stated there was no odor of gas.
The expert testimony is to the effect that the component parts of natural gas, which is used in this vicinity, are largely methane and certain inert gas and a small percentage of carbon dioxide. Dr. Durlacher states that the inhalation of natural gas has no toxic effect and that persons who inhale natural gas experience nausea, vomit, and have headaches, which is about the severity of the effects. This expert pointed out that if the natural gas was of great density in the room, this could exclude oxygen and that anyone therein could be overcome, not as a result of breathing in the gas itself but because of the fact that the person is not inhaling oxygen. In other words, it is the exclusion of the oxygen which does the damage.
Dr. Durlacher -stated as an interesting fact that since natural gas has been used in the City of New Orleans, he knows of only one suicide by gas, and that in the particular case he had in mind an individual tied a plastic sheet around his head and over the gas jet and in that manner eliminated all outside air.
From the testimony of Buse, the heating expert, it appears plain to us that natural gas of sufficient density to exclude all oxygen could not possibly have entered the room for the simple reason, as stated by Buse, that the odor of natural gas will not linger unless all oxygen has been eliminated. As said before, the neighbor who rushed into the room sensed no gas odor. One policeman said there was an odor of gas,, but no mention of this appears in his report.
We are absolutely certain from the evidence before us that the child’s death under investigation did not occur as a result of escaping natural gas, and we rule that out. as a cause.
This eliminates from further consideration the absence of a cap over the top of the vent pipe, if in fact there was none. All that could have happened in such event is that the flame would have been extinguished which would have permitted a flow of unburned natural gas which was not the case.
Sight cannot be lost of the fact that the four children were in a closed room. It is true that Buse testified that the crack about the door created substantial ventilation, but with all due respect to this expert the room must have been exceedingly close. The expert evidence is overwhelming to the effect that the children could have been overcome from deleterious effects produced by confinement. Carbon dioxide is caused by combustion and carbon dioxide can come from breathing, and to either of these the asphyxiation of the children could be attributed under the circumstances.
The experts were unable to say whether the deceased child had been the subject of asphyxia, or if so what caused it, and whether this led to her death by drowning.
Frankly, we do not .know what caused the demise of the little girl, but we unhesitatingly stand firm in our conclusion *347 that there is no evidence that a defect in the premises brought it about or was a contributing cause. Hence, plaintiffs cannot be successful in their demands. They have not borne the burden of proving their case by a preponderance of evidence. It was encumbent that they show that their child •died because of vices or defects in the premises. See Burch v. Mathson, La.App., 26 So.2d 230; Dugas v. Mayer, La.App., 179 So. 607; Castain v. Lograco, La.App., 152 So. 153; Boudro v. United States Fidelity & Guaranty Co., La.App., 145 So. 294; Potter v. Soady Bldg. Co., Inc., La. App., 144 So. 183; Cosey v. Scott, 17 La. App. 680, 137 So. 361. The happening of the accident raises no presumption that the landlord was negligent or that he failed to keep his building in repair. Boudro v. United States Fidelity & Guaranty Co., supra.
For the reasons assigned, our original decree is reinstated and made the final judgment of the court.
Original decree reinstated.