138 So.2d 132 (1962)
Mrs. Ella W. MURPHY and Rivers Claude Murphy, Plaintiffs-Appellants,
v.
FIDELITY AND CASUALTY COMPANY OF NEW YORK et al., Defendants-Appellees.
No. 9653.
Court of Appeal of Louisiana, Second Circuit.
January 31, 1962.
Rehearing Denied March 7, 1962.
*133 Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for appellants.
Lunn, Irion, Switzer, Trichel & Johnson, Cook, Clark, Egan, Yancey & King, Shreveport, for appellees.
Before HARDY, GLADNEY and BOLIN, JJ.
HARDY, Judge.
This is an action, ex delicto, in which the plaintiffs are the widow and son of one Oliver Rivers Murphy, who allegedly met his death, on July 21, 1960, by electrocution caused by contact with uninsulated or inadequately insulated wires conveying lethal charges of electric current. Named as defendants are Mrs. Jessie D. Reeves, her son, Joseph Reeves, owners of the building in which the accident occurred, and their insurer, Fidelity & Casualty Company of New York. Additional defendants are Raymond Madden, owner of an adjoining building, and his insurer, United States Casualty Company. From judgment sustaining separate motions for summary judgment, filed on behalf of the respectively named insurance companies, and dismissing plaintiffs' suit, the latter have perfected this appeal.
The material facts disclosed by the pleadings, and which appear to be conceded only for the purpose of the disposition of this appeal, may be delineated as follows:
The defendant, Mrs. Jessie Reeves, is the owner of a two-story building located in the City of Arcadia, Louisiana, constructed sometime prior to the year 1900, which she acquired in or about the year 1930. The first floor of the Reeves' building is partially occupied by the insurance agency conducted by Mrs. Reeves and her son, and the upper floor appears to have been used principally for storage purposes. The defendant, Madden, owns a building immediately adjoining the Reeves' building on the south, in which he operates a clothing store. The two buildings are separated only by a common wall, the lower part constructed of brick and the upper part of wood. In the year 1947 the Reeves' building was damaged by fire and in the course of repair its electrical system was re-wired. Beneath the flooring of the upper story of the Reeves' building there exists a sub-floor, and in the space between these two floors on the Reeves side of the common wall there run two electrical service wires conducting electric *134 current used by Madden in his clothing store. These wires originate in a fuse box at which the current is controlled by a master switch on the wall of the Madden building then enter the Reeves' building, run along the wall therein to a fuse box, and, emerging from said box, continue for a distance inside the south wall of the Reeves' building, where they re-enter the Madden building and serve the specific purpose of lighting the display window of the Madden store, controlled by a switch in or near said location. In the year 1948 the Reeves defendants procured the installation of an air-conditioning unit which was located between the flooring of the upper story and the sub-flooring beneath. At the time of this installation a trap door was cut in the flooring of the upper story to permit access to the air-conditioning unit, and at a later date an additional trap in the flooring was provided, apparently to enlarge the access area. These trap accesses were located immediately below the fuse box and at a point where the wires arched out from the wall for an undisclosed distance. On July 21, 1960, plaintiffs' decedent, in the course of making or preparing to make repairs to the Reeves air-conditioning unit, came in contact with the charged electrical wires, at the point where they arched into and out of the fuse box above described, and was electrocuted. Plaintiffs' action is predicated upon the provisions of Articles 670 and 2322 of the LSA-Civil Code, which specify the responsibility of the owners of buildings for damages caused by the fall or ruin of all or any part thereof.
The motion for summary judgment filed on behalf of Fidelity & Casualty Company of New York, as the Reeves insurer, was predicated upon the proposition that there is no genuine issue of material facts set forth in the pleadings and that the affidavits attached to the motion conclusively show that the electrical wiring which was the alleged lethal instrumentality was "* * * not owned by, under the control of, or in any way the responsibility * * *" of the Reeves but was owned and controlled by another. The motion on behalf of United States Casualty Company, as insurer for Madden, represents that no genuine issue of material fact is set forth and, specifically, that the attached depositions "* * * show that said insured had no knowledge of the existence of said wires; that no difficulty giving notice of any trouble in said wires had been experienced to the date of the alleged accident, that said wires were located in a position completely beyond the physical control of said insured and were subject to the exclusive control of persons other than said insured."
Admittedly the sole issue tendered by this appeal involves a question of law and relates to the responsibility, vel non, of either or both of the defendant insurers.
The conclusion to be reached must be primarily determined by the interpretation of LSA-C.C. Article 2322, which reads as follows:
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
It is urged on behalf of plaintiffs that the death of their decedent was proximately caused by the neglect of the owners of both the Reeves and the Madden buildings to keep the electrical wiring, which is the lethal instrumentality involved, in a proper state of repair. In connection with this contention it is pertinent to note, in addition to the facts above related, that no one was present while Murphy was engaged in his work on the air-conditioning unit, and sometime later he was found dead, seated on a sewer pipe, which also ran between the flooring and the sub-flooring of the upper story of the Reeves building, facing the unit upon which he was working and with his back against the electric wires at the point where they arched out from the wall. These wires were discovered to be energized with sufficient voltage to cause death; the current was not interrupted until the main switch in the Madden building was cut off, *135 and decedent's back gave evidence of the presence of electric burns.
The defendant insurers primarily rely, as authority in support of their motions, upon the case of Southern Farm Bureau Casualty Insurance Company v. McKenzie (U.S.C.A. 5th Cir.1958), 252 F.2d 195. In some respects the facts of the cited case are remarkably analogous to those involved in the matter before us, specifically in that the death of decedent was caused by contact with electric wires allegedly improperly and inadequately insulated and protected, which wires were located in a home owned by defendant's insured. Original judgment in favor of plaintiffs was reversed and the case remanded with instructions for the entry of a directed verdict in favor of the insurer. The principal issue in the McKenzie case was the construction of LSA-C.C. Article 2322. The opinion of the court contains the following statement:
"The key word in the article which permits or forbids its application to a given set of facts is `ruin', a word which has been used by the Louisiana legislature interchangeably with its Latin origin, `falling down.' Franks v. Suthon, C.C., 159 F. 174. This codal article thus makes the owner of a building answerable for the damage `occasioned by its ruini. e., fall or collapse whether such is due to structural vice or neglect to repair.' Hero v. Hankins, 5 Cir., 247 F. 664, 666. Likewise and to the same effect is Guidry v. Hamlin, La.App., 188 So. 662, 664 * * *." (followed by a quotation from the opinion in the last cited case).
The opinion continued by holding that there was no showing of a "ruin, fall or collapse" which occasioned damage and under Article 2322 a home owner was not subjected to liability without fault for all damage occasioned by defective conditions but only for that damage occasioned by ruin. In support of this the opinion relied upon Guidry v. Hamlin, supra, as constituting what it called "* * * a clear example of the refusal of the Louisiana courts to apply the rule of absolute liability expressed in this article to a non-ruin fact situation." The opinion then proceeded to acknowledge the author's awareness of landlord and tenant cases in which the Louisiana courts had applied the article to fact situations not involving "ruin", specifically citing Davis v. Hochfelder, 153 La. 183, 95 So. 598, and Gaida v. Hourgettes, La.App., 67 So.2d 737, but distinguished such cases on the ground that the courts were not there considering the liability of a home owner but were concerned only with the liability of a lessor. The opinion further contained the following statement:
"We have carefully examined the record in this case and find not one scintilla of evidence that Sibley (the home owner) had any knowledge of the splice in question or the manner in which the wiring was installed in his attic."
After serious consideration we find ourselves in disagreement with the rationale of the opinion in the McKenzie case and the conclusions reached as a result thereof. In the first place, we challenge the validity of the observation that the terms "ruin" and "falling down" have been used interchangeably, that is, in the sense of synonomously, by the Louisiana Legislature. In our opinion, this interpretation which the court assertedly supported by reference to the Frank (not Franks as set forth in the McKenzie opinion), Hero and Guidry cases is not justified. The author of the opinion in the Frank case made the following statement:
"I think it is clearly the law, then, that the landlord and owner of the building is liable in damages to all persons who are lawfully in his building for injuries sustained by them as the result of the dilapidated condition of the building; * * *." (Emphasissupplied)
*136 The observation in the Hero case that Article 2322 makes the owner of a building answerable "* * * for the damage occasioned by its ruini. e. fall or collapse" appears entirely gratuitous and, if construed as a definition of the word "ruin", should be disregarded. The opinion, in the same paragraph and immediately preceding the above limited definition, referred to a then recent decision of the Supreme Court of Louisiana in Ciaccio v. Carbajal, 142 La. 125, 76 So. 583, and observed that the decision interpreted Article 2322 as imposing a duty on the owner of a building "to keep it in a safe condition, * * *," and that such a duty was "* * * not absolved by the tenant's failure to make the necessary repairs; * * *."
Examination of the Guidry case discloses that the conclusion reached was based upon the finding that the accident was caused by the faulty design of the building and not by any defect therein. The opinion of the court clearly and without any ambiguity pointed up the reason for its conclusion in the following words:
"Article 2322 obviously has no application, for, if there is anything wrong about the rail provided, it is evident that it is the design which is complained of and not the fact that any part of it was weak or gave way." (Emphasis supplied)
By reason of the distinctions which we have above attempted, we cannot accept the reasoning of the opinion in the McKenzie case, and particularly and emphatically we disagree with the statement therein that:
"Guidry v. Hamlin, supra, is a clear example of the refusal of the Louisiana courts to apply the rule of absolute liability expressed in this article to a non-ruin fact situation."
Nor can we acquiesce in that part of the opinion in the McKenzie case which summarily dismissed the effect of the Davis and Gaida cases on the ground that "* * * the courts were not considering the liability of a home owner * * *." (Emphasis contained in the McKenzie opinion).
Therefore, being of the opinion that the McKenzie case is not controlling nor to be regarded as authority in the determination of the issue before us, we proceed to a further consideration in the light of other authorities.
As a point of departure, we feel justified in approaching the question from the point of view which seems to be conceded by all counsel, that the determination of the issue presented by this appeal must be resolved upon a definition, consideration and application of the term "ruin." To begin with, we are convinced that in customary or common usage the word may be applied either to a complete destruction or to a condition of partial decay or dilapidation. For example, an article of clothing may be ruined and rendered useless by damage to a portion thereof without the necessity for complete deterioration. This somewhat pragmatic definition is supported by lexicographical interpretation. (Cf. Webster's New International Dictionary, Second Edition, verbo "ruin", in which, parenthetically, it may be noted that the use of the word as meaning the act of falling or tumbling down, is now considered to be rare).
Nor does our jurisprudence detract from this definition. In Gilliam v. Lumbermen's Mutual Casualty Company, 240 La. 697, 124 So.2d 913, the opinion of Mr. Justice McCaleb contained the following enunciation:
"* * * for it is fundamental that the owner of a building cannot, by contract, escape his liability ex delicto under Articles 670, 2315 and 2322 of the Civil Code for damages to third persons for injuries sustained by reason of the owner's neglect to keep the building in repair or by reason of defects or (sic) original construction. Klein v. Young, 163 La. 59, 111 So. 495."
*137 Similarly, in Dunn v. Tedesco, 235 La. 679, 105 So.2d 264, the opinion of Mr. Justice Hawthorne contained the following statement of the issue involved:
"The instant suit is based on Article 670 and 2322 of the Louisiana Civil Code, which place a duty on the owner of a building to keep his premises in repair and make him answerable for damage either occasioned by its ruin when caused by his neglect to repair it or resulting from a vice in its original construction. In order to succeed in this action these plaintiffs would have had to show by a preponderance of the evidence that the heater was defective and that its defects caused or contributed to their infant daughter's death."
The demands of the plaintiffs in the last above cited case were rejected on the specific ground that they had failed to establish by a preponderance of the evidence the fact that a defect in the water heater caused or contributed to the death of their child.
In Gaida v. Hourgettes, La.App., 67 So. 2d 737 (Orleans, 1953), the court held that damages resulting from a defective water heater were recoverable, inter alia, under the provisions of LSA-C.C. Articles 670 and 2322.
We think no purpose would be served by extending this opinion to a discussion of other cases in our jurisprudence which are to the same effect and which, to our minds, justify the holding that the term "ruin," as used in LSA-C.C. Article 2322, is applicable to defects in parts or appurtenances to a building, charging the owner with responsibility for the damage occasioned thereby.
Finally, we think it desirable to call attention to the fact that Article 2322 is only one of the specifications of liability which flow from the right to recovery in actions ex delicto established by Article 2315. Most of these articles are originally derived from the Code Napoleon, and as they now appear in our Revised Civil Code are identical or very similar in wording. Article 2322 is identical, word for word, with CN 1804, Art. 1386, with the exception of the interpolation in our Code of the word "original" immediately before the word "construction." For this reason, we have found of unusual interest the comments of Planiol, particularly as set forth in Volume 2,Part 1, Nos. 924 to 931 (8) inclusive. Beginning with the restricted effect of the codal article and its contemplation of the ruin of a building in the nature of collapse, the author develops his discussion to comprehend the modern changes of jurisprudence to the inclusion of a legal obligation of care by reason of the damages that the immovable or a part of the immovable might cause third persons.
On the basis of the reasons above stated and authorities cited supra, we conclude that the alleged defects in the electrical wiring system involved and the failure to keep the same in repair, imposed a liability upon the owners of the buildings for the damages occasioned thereby.
We find no particular difficulty in resolving the secondary or subordinate issues presented by this appeal. The cross contentions of the two defendant insurers that one assured was not responsible because he was not the owner of the building in which the offending portion of the wires was located and that the other assured was not responsible because she was not the owner of the wires and had no knowledge of their existence, do not appear to us to be appropriate to consideration on a motion for summary judgment, but must and can be resolved only after trial on the merits. Nevertheless, it is obvious that both of these contentions, being inconsistent, cannot be meritorious and perhaps neither can ultimately be sustained under the facts.
As for lack of knowledge and consequent neglect to repair the existing defect, we regard this question as having been so *138 definitely disposed by our jurisprudence as to obviate the necessity for citation, but by way of reference we cite Davis v. Hochfelder, 153 La. 183, 95 So. 598; Green v. Billia, La.App., 86 So.2d 578 (Orleans, 1956); Tesoro v. Abate, La.App., 173 So. 196 (Orleans, 1937).
For the reasons assigned the judgment appealed from is annulled and set aside. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the motions for summary judgment filed on behalf of the defendants, Fidelity & Casualty Company of New York and United States Casualty Company be and they are overruled, and this case is remanded to the Honorable the Second Judicial District Court in and for the Parish of Bienville, State of Louisiana, for further proceedings in accordance with law. Costs of this appeal are taxed against defendants-appellees and IT IS ORDERED that the assessment of all other costs await final determination hereof.