165 So.2d 497 (1964)
Mrs. Ella W. MURPHY and Rivers Claude Murphy, Plaintiffs-Appellees,
v.
FIDELITY AND CASUALTY COMPANY OF NEW YORK et al., Defendants-Appellants.
No. 10183.
Court of Appeal of Louisiana, Second Circuit.
May 28, 1964.
Rehearing Denied July 2, 1964.
*498 Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellant Fidelity and Cas. Co. of New York.
Cook, Clark, Egan, Yancey & King, Shreveport, for appellant, United States Cas. Co.
Booth, Lockard, Jack, Pleasant & Le Sage, Shreveport, for appellees.
Before HARDY, GLADNEY and BOLIN, JJ.
GLADNEY, Judge.
This suit in tort was instituted by the widow and son of Oliver Rivers Murphy who met his death on July 21, 1960 by electrocution caused by contact with uninsulated or inadequately insulated wires conveying lethal charges of electric current. Named as defendants are Mrs. Jessie *499 D. Reeves, her son Joseph Reeves, owners of the building' in which the accident occurred, and their insurer, Fidelity and Casualty Company of New York; and Raymond Madden, owner of an adjoining building, and his insurer, United States Casualty Company. When first considered, the trial court sustained separate motions for summary judgment, filed on behalf of the respective defendants, and dismissed plaintiffs' suit. Appeals were perfected to this court and the decision of the lower court reviewed, 138 So.2d 132 (1962), with reversal of the judgment. The motion for summary judgment filed on behalf of Fidelity and Casualty Company of New York, as the Reeves' insurer, was predicated on admitted facts showing that the offending electrical wiring was not owned, used by, or in any way the responsibility of the Reeves but was owned and controlled by Madden. The motion on behalf of United States Casualty Company, as insurer for Madden, was based on established facts that Madden had no knowledge of the existence of said wires, that no difficulty giving notice of any trouble in said wires had been experienced to the date of the alleged accident, that said wires were located in a position completely beyond the physical control of said insurer; and were subject to the control of persons other than Madden.
Plaintiffs' action is predicated upon the provisions of Articles 670 and 2322 of the LSA-Civil Code specifying the responsibility of the owners of buildings for damages caused by the fall or ruin of a wall or any part thereof. This court in reversing the appealed judgment and remanding the cause for further proceedings held that the term "ruin" as used in LSA-C.C. art. 2322 making the owner of a building answerable for damage occasioned by its ruin, is applicable to defects in parts or appurtenances to the building and ruled that the owner of the building serviced by the wires (Madden), or owner of the building in which the wires were located (Reeves), or both, were liable for the wrongful death of the deceased, an electrical repairman, occasioned by their failure to keep such electric wiring in repair. Upon remand of the case the trial court was presented with three issues: (1) the responsibility vel non of either, or both of the owners and their insurers; (2) the validity of the alternative special pleas of contributory negligence filed on behalf of appellants, and (3) the amount of damages. The same issues confront this court on this appeal.
The prior opinion of this court has thus disposed of the question of negligence by deciding that the failure to keep the electrical wiring in repair, imposed a liability upon the owners of the buildings for the damages occasioned thereby. Thus our former decision on this phase of the suit has become the law of the case and is no longer an issue. Keller v. Thompson, La. App., 134 So.2d 395 (3rd Cir. 1961); Louisiana State Bar Ass'n v. Theard, 225 La. 98, 72 So.2d 310 (1954); City of Gretna v. Aetna Life Ins. Co., 207 La. 1085, 22 So.2d 658 (1945); Hoey v. New Orleans Great Northern R. Co., 164 La. 112, 113 So. 785 (1927); Davis v. Lewis & Lewis, La.App., 72 So.2d 612 (1st Cir. 1954) (cert. granted but this issue not discussed), 226 La. 1059, 78 So.2d 173 (1954) and 226 La. 1064, 78 So.2d 174 (1954).
In our prior opinion this court thus restricted the effect of its decree by pronouncing:
"The cross contentions of the two defendant insurers that one assured was not responsible because he was not the owner of the building in which the offending portion of the wires was located and that the other assured was not responsible because she was not the owner of the wires and had no knowledge of their existence, do not appear to us to be appropriate to consideration on a motion for summary judgment, but must and can be resolved only after trial on the merits. Nevertheless, it is obvious that both *500 of these contentions, being inconsistent, cannot be meritorious and perhaps neither can ultimately be sustained under the facts.
"As for lack of knowledge and consequent neglect to repair the existing defect, we regard this question as having been so definitely disposed by our jurisprudence as to obviate the necessity for citation, but by way of reference we cite Davis v. Hochfelder, 153 La. 183, 95 So. 598; Green v. Billia, La. App., 86 So.2d 578 (Orleans, 1956); Tesoro v. Abate, La.App., 173 So. 196 (Orleans, 1937)."
With respect to the lack of knowledge and consequent neglect to repair the existing defect by the owner of the building, the statement of law as recited above is correct. In the legal application of LSA-C.C. arts. 670, 2322 neither ignorance of the condition of a building, nor the circumstance that the defect could not be easily detected can be successfully urged as a defense by the building owner in an action where damages sought are caused by neglect to repair. The obligation of every property owner to answer in damages for a failure to keep his property in such condition of repair that it will not be dangerous to other persons is imposed by law. Klein v. Young, 163 La. 59, 111 So. 495, 499 (1927). In Thompson v. Commercial National Bank, 156 La. 479, 100 So. 688, 690 in discussing the above mentioned codal provisions, the court commented:
"Neither ignorance of the condition of the building nor the circumstance that the defect could not be easily detected can be successfully urged as a defense by the owner. Barnes v. Beirne, 38 La.Ann. 280. While contributory negligence is a complete defense under this article, and is pleaded in this case, defendant oil company has failed to establish such plea. Frank v. Suthon (C.C.) 159 Fed. 174." See also Matranga v. Hilman, La.App., 94 So.2d 568, 569 and 570 (2nd Cir. 1957) and authorities cited therein.
For a proper determination of the issues, and more particularly for convenient reference, certain uncontroverted facts are now set forth although substantially stated in our preceding opinion:
The defendant, Mrs. Jessie Reeves, is the owner of a two-story building located in the City of Arcadia, Louisiana, constructed sometime prior to the year 1900, which she acquired in or about the year 1930. The first floor of the Reeves' building is partially occupied by the insurance agency conducted by Mrs. Reeves and her son, and the upper floor appears to have been used principally for storage purposes. The defendant, Madden, owns a building immediately adjoining the Reeves' building on the south, in which he operates a clothing store. The two buildings are separated only by a common wall, the lower part constructed of brick and the upper part of wood. In the year 1947 the Reeves' building was damaged by fire and in the course of repair its electrical system was re-wired. Beneath the flooring of the upper story of the Reeves' building there exists a sub-floor, and in the space between these two floors on the Reeves side of the common wall there run two electrical service wires conducting electric current used by Madden in his clothing store. These wires originate in a fuse box at which the current is controlled by a master switch on the wall of the Madden building then enter the Reeves' building, run along the wall therein to a fuse box, and, emerging from said box, continue for a distance inside the south wall of the Reeves' building, where they re-enter the Madden building and serve the specific purpose of lighting the display window of the Madden store, controlled by a switch in or near said location. The electrical conduits, which were in fact BX cables, and the wires encased within them, were energized through and by the electrical supply entering into the *501 Madden building. The wires from the electric power box were attached to the Madden building at a control box at the rear of the Madden building and this supply of electricity energized the wires encased in the cables. The two BX cables in question were attached to a plug box which faced into the inside of the Madden building for the purpose of connecting electrical appliances. The front of this plug box faced into the Madden building between the two floors above mentioned. Only the back or rear of this box or plate faced towards the Reeves building and it was at the rear of this box that these cables were connected to the plug box. These cables in no way formed any part of the electrical system of the Reeves building and were not in any way connected to or serviced by the electrical supply to the Reeves building, and they did not receive any current from the power supply into the Reeves building.
In the year 1948 the Reeves' procured the installation of an air-conditioning unit which was located between the flooring of the upper story and the sub-flooring beneath. At the time of this installation a trap door was cut in the flooring of the upper story to permit access to the airconditioning unit, and at a later date an additional trap in the flooring was provided, apparently to enlarge the access area. These trap accesses were located immediately below the fuse box and at a point where the BX cables containing the electric wires arched out from the wall.
On July 21, 1960, plaintiffs' decedent, in the course of making or preparing to make repairs to the Reeves air-conditioning unit, came in contact with the charged electrical wires, at the point where they arched into and out of the fuse box above described, and was electrocuted. The deceased was found unconscious seated on a metal sewer pipe and leaning against the cables with his back against them. In an effort to cut off the flow of electricity into the cables, Roy Lee Adams, an employee of the Louisiana Power and Light Company, testified he disconnected the load wires in the meter base of the Reeves building but as that did not de-energize the wires contacting the body of the deceased, he discovered the energy was coming from the Madden service wires; and that before disconnecting the load wires in the meter base serving the Reeves building he observed that the wires supplying the inside of the Reeves building had previously been turned off as evidenced by the fact that all of the boxes were off and presumably this had been done by the deceased prior to working on the air-conditioning unit.
The undisputed evidentiary facts disclose the lethal wires were permanently attached to and formed a part of the common wall between the Reeves and Madden buildings, and as such were immovables by their nature. LSA-C.C. art. 467. LSA-C.C. art. 2317 further provides responsibility for the things which we have in our custody. It therefore seems clear that the offending wires although under the ownership of and serving Madden, by virtue of their attachment to the common wall were in the custody of Reeves in whose building the damage occurred. Thus liability attached to the owner and to the possessor or custodian of the lethal wires which were attached to the common wall and therefore Reeves and Madden each were separately responsible for the damages occasioned. As joint tort-feasors they are solidarily liable. See in this connection LSA-C.C. arts. 2091 and 2324.
It is strenuously urged on behalf of appellants that the deceased was guilty of contributory negligence which charges, if established, would bar recovery. Unquestionably, Murphy was an experienced airconditioning man and mechanic who knew all about electricity and in particular about the air-conditioning unit and place where he was working at the time of the accident, as he had performed services therein on various occasions for a period of approximately eleven years prior to the accident. *502 Counsel argue that he failed to use ordinary care when he seated himself on the iron sewer pipe, a known conductor of electricity, grounded himself, and then leaned against an electric wire; and that as disclosed by photography, Murphy must be held to have observed the plainly visible BX cables and therefore he was negligent in assuming these were not dangerous in the light of the testimony of an expert electrician, W. P. Lemoine, that the presence of the BX cable, a type which has not been in current use for some twenty-five years, constituted a sufficient warning to an experienced electrician of the potential danger of the electrical installation. It is likewise contended that the doctrine of "momentary forgetfulness" is not applicable under the circumstances.
To refute the evidence as to Murphy's lack of care, it was shown that he did in fact shut off the electricity prior to working upon the air-conditioning unit as borne out by the testimony of Roy Lee Adams. Testimony was tendered by two experienced electricians who were acquainted with and had worked with the deceased for many years to the effect that the deceased had always exhibited proper caution for dangers inherent in electricity and to their knowledge had never taken unnecessary chances.
We opine that when Murphy took the precaution of shutting off the electricity prior to beginning his work on the airconditioning unit and because of his past uneventful experience that he had the normal and natural right to anticipate that he had made himself reasonably safe and that any wires he might come in contact with within the Reeves building had been de-energized. He was forced to work in close quarters and we find he had knowledge of the presence of the BX cables. But these cables presented no hazard unless energized and as heretofore pointed out he had every reason to believe that he had deenergized these wires.
Somewhat similar facts were involved in Stansbury v. Mayor and Councilmen of Morgan City, 228 La. 880, 890, 84 So.2d 445, 448 (1955) in which case a house painter was electrocuted by uninsulated wires attached to the house he was painting. There were no eyewitnesses and the victim was discovered at the foot of his ladder beneath the wires. In rejecting a plea of contributory negligence the supreme court stated:
"Defendants introduced no evidence to show contributory negligence and none was shown. Whenever this defense is pleaded it is incumbent upon the party pleading it to prove it by a preponderance of evidence. Clements v. Louisiana Electric Light Co., 44 La.Ann. 692, 11 So. 51, 16 L.S.A. 43, 32 Am.St.Rep. 348; Layne v. Louisiana Power & Light Co., La.App., 161 So. 29, 35. It was pointed out in the Layne case that when a person is employed in the presence of a known danger, to constitute contributory negligence, it must be shown that he voluntarily and unnecessarily exposed himself to the danger and where there are no eyewitnesses to any act of negligence it is presumed that the decedent acted with ordinary care. The court in the Layne case quoted from Adams v. Iron Cliffs Co., 78 Mich. 271, 44 N.W. 270, 18 Am.St. Rep. 441 the following:
"`"The reason for this rule is that life is dear to the normal person, and that he will not willingly do the thing which will extinguish it, but, on the contrary, will exercise due care to preserve it."'" [84 So.2d 445, 448].
Also we find:
"It has long been the jurisprudence that knowledge alone on the part of the injured party that the premises were in a defective condition will not defeat an action for damages against his landlord or the owner of the premises. Wise v. Lavigne, 138 La. 218, 70 So. 103; Boutte v. New Orleans Terminal Co., 139 La. 945, 72 So. 513 and Landry *503 v. Monteleone, 150 La. 546, 90 So. 919. Obviously, the sustaining of injury as the result of a known defect is not conclusive proof of contributory negligence; such negligence cannot be presumed for the burden always rests on the defendant to establish it. Accordingly, where the defendant, as here, claims that the plaintiff has established it for him by the allegations of the petition, it must clearly appear that the defect was so dangerous that the premises could not be used even with the exercise of ordinary care, and that the plaintiff was fully aware that such was the case. As stated above, we do not think that the petition in this case comes within that category. See Wilcox v. Lehman, La.App., 12 So.2d 641, citing Estes v. Aetna Casualty & Surety Co., La.App., 157 So. 395." [Gilliam v. Lumbermens' Mutual Casualty Company, 240 La. 697, 124 So.2d 913, 915, 916 (1960).]
The defendants have failed to carry the burden of proof imposed upon them by law to establish the contributory negligence of the deceased.
The trial court awarded Mrs. Ella W. Murphy the sum of $25,000.00 for loss of support and $7,500.00 for loss of love and affection, making a total award of $32,500.00. Rivers Claude Murphy was awarded $3,000.00 for loss of support and $7,000.00 for loss of love and guidance. The appellees have answered this appeal asking that Mrs. Murphy's awards be increased to $45,000.00 and Rivers Claude Murphy's awards be increased to $15,000.00. Appellants oppose, asserting the awards are excessive. We have carefully reviewed the circumstances with respect to quantum. The moving facts are that the deceased was fifty-two years of age at the time of his death and was survived by his wife and Rivers Claude Murphy, a twenty-year-old college student. The decedent appears to have enjoyed a satisfactory position in life with an income of from $4,000.00 to $5,000.00 per year. Of this amount he had financed for three years his son who was studying electrical engineering at Louisiana Tech and who needed additional money for books and tuition to complete his education which, however, was discontinued because of his father's death. It further appears that his family was an entirely happy unit. After a study of this issue, we have concluded that the awards as made by the trial court are neither excessive nor inadequate.
The judgment appealed from is affirmed at cost of the appellants.